People of the State of Illinois, Plaintiff-Appellee, v. John C. Franklin, Defendant-Appellant.

Gen. No. 50,379.

First District, Second Division.

September 13, 1966.

Rehearing denied October 4, 1966.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Marshall A. Patner, Frederick F. Cohn and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Joel M. Flaum, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE LYONS delivered the opinion of the court.

This is an appeal from a conviction for aggravated battery, after the entry of pleas of not guilty to charges of attempted murder and aggravated battery, and trial before a jury, with sentence in the Illinois State Penitentiary of four (4) to eight (8) years.

Lawrence Humphrey, the complaining witness, testified that on December 19, 1963, at approximately noon, defendant threatened him with physical harm unless he left alone one Charlene DeLees, allegedly the object of defendant's stepfather's affections; that later that day, while in the company of Miss DeLees, he entered a car containing defendant and two of his friends, Dennis Procop and Richard Raff; that later Humphrey, who had fallen asleep, was awakened by being pulled out of the car by defendant and one of his acquaintances; that he was forced into a snow-covered alley; that defendant proceeded to repeatedly stab and hit him, while one of defendant's acquaintances, Dennis Procop, kicked him; that defendant stated to him that he had been forewarned to avoid seeing Miss DeLees; and that after the attack he stumbled a few feet and next remembered awakening in a hospital. He further testified, over objection, that he had been stabbed thirteen (13) times; that he had lost much blood; that he was in the hospital for over a month; and that he had been in critical condition.

Miss Charlene DeLees' testimony substantially corroborated that of Humphrey's. She testified that defendant and Dennis Procop pulled Humphrey from the car while one Richard Raff, another acquaintance of defendant, held her in the car; that Humphrey walked away with defendant and Procop; that then she heard a scream; that defendant and Procop returned running to the car; that defendant placed a knife under his coat; that she was then taken to the home of defendant's stepfather; that defendant stated "the jig is taken care of" and also said not to let her leave or make any phone calls; that, however, she did leave and phoned the police; and that she visited the victim at the hospital. She further testified, over objection, "He was, when I saw him, he had tubes, bandages all over his hands. He was swollen,

black and blue, arms all swollen. His face, he was all just black and blue and bloody and bandages." She also testified that later she went to the home of her sister, where the defendant was in attendance and that defendant stated that if he had known that Miss DeLees and his stepfather were in love, he would not have done what he did.

Officer Patrick Touhy of the Chicago Police Department testified that he made an investigation of the assault; that he went to the defendant's stepfather's home; that defendant was not at home; and that after finding out that defendant had fled to Alabama, he and his partner traveled there, in order to return defendant to Illinois.

Darlene Ahrens, defendant's half sister, testified for the defense and stated that she knew Charlene DeLees, had seen her take narcotics and that Miss DeLees said she wanted to see defendant rot.

Dennis Procop, a juvenile, age 15, who testified for the defense, related that he had given a statement to the police; that the police had "pressed him"; that defendant had directed him to drive to an alley, park, and leave the motor running; that Humphrey was told by defendant that he was going to take him somewhere; that Humphrey was willing but Miss DeLees objected and Raff held her; that he walked down the alley with Humphrey and defendant and after proceeding approximately 50 to 75 feet, he was instructed by defendant to return to the car; that when he was near the car, he turned around and saw a scuffle and something flashing, which appeared to be a knife; and that he could not tell who started the scuffle or who had possession of the knife.

On cross-examination, the People asked this witness if he had been convicted for the same offense as the one for which defendant was on trial. Defense counsel ob-

jected on the grounds that the witness was a juvenile, but the boy was told to answer and admitted that he was on probation for the offense.

John Franklin, the defendant, testified on his own behalf and represented that he helped Humphrey out of the car and accompanied him down the alley on the way to an elevated train station; that he then turned to walk away; that Humphrey approached him and threatened to kill him; that Humphrey was in possession of a knife and tried to grab him; that he tripped Humphrey and both parties fell to the ground where a struggle ensued; that he knocked the knife from the hands of Humphrey; that Humphrey started choking him and continued to do so until he was able to retrieve the knife and strike Humphrey; that he stabbed Humphrey until Humphrey ceased to hold him; and that he never attempted to murder or cause him great bodily harm.

Detective Roy Thyfault testified in rebuttal that the defense witness, Dennis Procop, was not threatened during his interrogation and that Procop's exact answers were placed in Procop's signed statement. Officer Paul Russell testified in rebuttal that he searched the area of the assault and found no knife.

At the close of the evidence, the court instructed the jury on the law but did not inform the jury on the proper use to be made of Procop's statement. Defendant was found guilty of aggravated battery and not guilty of attempted murder.

Defendant's theory of the case is (1) that the indictment is invalid because it did not name the place of the offense, (2) that defendant was prejudiced by the repeated testimony, over objection, describing the wounds and permanent nature of the complaining witness' injuries, (3) that prejudicial error was committed by the trial court (a) by allowing the State to introduce a prior statement to impeach a defense witness, when there was no prior determination that the statement that was given

was voluntary, and (b) by not instructing the jury on the proper use to be made of a prior statement of a juvenile witness, and (4) that prejudicial error was committed by the trial court in allowing the State to elicit from a juvenile witness testimony that he had been convicted for his part in the same offense.

We do not have to consider defendant's first contention as a result of the decisions reached in People v. Blanchett, 33 Ill2d 527, 212 NE2d 97 (1965) and People v. Petropoulous, 34 Ill2d 179, 214 NE2d 765 (1966).

■ Defendant's second contention, that he was prejudiced by testimony regarding the injuries sustained by the victim of the assault, is also without merit. The theory of defendant at the trial was that of self-defense. Defendant does not deny that he stabbed the victim but claims whatever he did was done to prevent injury to himself. It was, therefore, proper for the State to present evidence of the number of stabbings and the injuries sustained by the victim of the assault in order to show that the force used by defendant was unreasonable even if such force was being utilized in defense of his person.

We are aware of the decision in People v. Nickolopoulous, 25 Ill2d 451, 185 NE2d 209 (1962), which held that evidence of the extent of a victim's injuries is inadmissible. The defense in that case, however, was not one of self-defense but one of intoxicated inability to form the necessary homicidal intent and is therefore distinguishable.

■ We also disagree with defendant's third contention that it was prejudicial error for the state to introduce a prior statement to impeach defense witness Procop prior to a determination that the statement given was voluntary. The only evidence that Procop gave as to the involuntary nature of the statement was in response to a question whether the police statement given was of his own free will. He answered "well, they sort of pressed me, they were rather hard on me." First of all, the

voluntariness of its character was first brought out and raised by counsel for defendant and subsequent testimony by the People was only comment on the evidence presented and developed by the defense.

█ Furthermore, no request was made for a hearing on the voluntariness of the statement, therefore, any such grounds were waived and not preserved for appeal. People v. French, 33 Ill2d 146, 210 NE2d 540 (1965).

█ No prejudicial error was committed because of the failure to tender an instruction to the jury on the proper use to be made of a prior statement of a juvenile witness. The defense requested no such instructions, even though they introduced the evidence. The Supreme Court in People v. Newman, 30 Ill2d 419, 197 NE2d 12 (1964), stated that the court should, *upon request,* instruct the jury of the purpose for which prior statements were admitted. (Emphasis supplied.)

Finally, no error was committed by the court in allowing a statement, by a defense witness who was on probation for the same offense, to stand. During the cross-examination of defense witness Dennis Procop, he was asked by the prosecutor if he was presently on probation for the same offense. The witness answered yes and an objection followed on the grounds that Procop was a juvenile. The court let the answer stand. Defendant claims that such examination was improper under Ill Rev Stats (1965), ch 23, Par 2001.

Par 2001 reads in part:

> . . . Deposition of any child under this Act or any evidence given in such cause, is not, in any civil, criminal or other cause or proceeding whatever in any court, lawful or proper evidence against such child for any purpose whatever, except in subsequent cases against the same child under this Act, . . . .

It is the position of the People that defendant misinterpreted this section and in support of their position

398

claim that (1) the statute was enacted to protect the delinquent minor, not another individual adult subsequently on trial, and (2) the statute in question does not prohibit such conviction being shown in impeachment. They point out that such an interpretation is evident from the subsequent language of Par 2001 wherein it is stated in part:

> . . . This Act shall be construed to the end that the care, custody and discipline of the children brought before the court shall approximate as nearly as possible that which they should receive from their parents, and that as far as practicable they shall be treated not as criminals but as children in need of aid, encouragement and guidance. . . .

We agree with the People that Par 2001 of the Family Court Act is directed toward protecting a delinquent minor in subsequent judicial proceedings involving the minor as a party to such an action. It was not enacted to prohibit the introduction of evidence against an adult defendant. To read such a construction into the Act would be interpreting legislative intent that is not apparent on the face of or in the tenor of the statutory language. The judgment is affirmed.

Judgment affirmed.

BRYANT, P. J. and BURKE, J., concur.