**ELIJAH RITTER, Appellant/Defendant**

**v.**

**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Crim. No. 2007-087

Supreme Court of the Virgin Islands

May 13, 2009

355

JOMO MEADE, ESQ., St. Croix, USVI, *Attorney for Appellant.*

TIFFANY V. ROBINSON, ESQ., AAG (Argued), DOLACE MCLEAN, ESQ., AAG, Dept. of Justice, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; SWAN, *Associate Justice*; and MEYERS, SR., *Designated Justice.*[1]

## OPINION OF THE COURT

(May 13, 2009)

PER CURIAM. Appellant, Elijah Ritter (hereafter "Ritter"), challenges the Superior Court's July 5, 2007 Judgment and Commitment, which sentenced him to seven and one-half years of incarceration for possession of a dangerous weapon during the commission of a crime of violence and one year of suspended incarceration for assault in the third degree, to run consecutively. On appeal, Ritter argues that: (1) the trial court erred in denying his motion for judgment of acquittal on grounds of insufficient evidence; (2) expert testimony as to the medical treatment of the victim

---

[1] Associate Justice Maria M. Cabret has been recused from this matter. Designated Justice Ishmael A. Meyers, Sr., a senior sitting judge of the Superior Court, sits in her place by designation pursuant to 4 V.I.C. § 24(a).

was improperly admitted; and (3) his constitutional right to a fair trial was violated when the trial court failed to dismiss the venire panel or instruct the petit panel during the trial. For the reasons which follow, we will affirm the Judgment and Commitment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On the morning of December 2, 2005, Ritter and Joshua Powell (hereafter "Powell") were involved in a physical altercation at St. Croix Educational Complex High School, where they were both students. On his way to his second period class, Ritter walked through an area of the school where students from the Williams Delight neighborhood gather. There was conflicting testimony as to whether the fight began because Ritter brushed up against Powell or because Powell tapped Ritter on his shoulder. After the two students exchanged words, Powell punched Ritter in his face, causing Ritter to fall to the ground. As he got back up, Powell punched Ritter several more times. The students then briefly parted but the fight continued. Powell held Ritter in a chokehold, and, according to some of the witnesses, Ritter held Powell in a lock around the middle of Powell's body. Eventually Ritter took a knife from his pocket and stabbed Powell several times. Ritter broke free of Powell's hold and ran from the area of the fight. Powell ran to the office where the principal, upon seeing his condition, drove him to the hospital in his personal vehicle. At the hospital, Powell was treated for numerous stab wounds to his back, neck, stomach, and chest including one that left his ear hanging loose and one that caused his lung to collapse.

At trial, Ritter testified that he used the knife only because he was dazed, blood was trickling in his eyes, and he was unable to breathe due to the chokehold. Ritter additionally testified that he was scared because the area where the fight occurred was the Williams Delight "posse" turf where Powell and his friends gathered and because he had been told during first period that Powell was after him. (Trial Tr., 95, Nov. 8, 2006.) Powell, on the other hand, testified that he initially punched Ritter only because Ritter had come toward him aggressively with his hand in his pocket.

In December 2005, the People of the Virgin Islands (hereafter "the People") filed an Information, charging Ritter with assault in the first degree, in violation of title 14, section 295(1) of the Virgin Islands Code, possession of a dangerous weapon — a knife — during the commission

of a crime of violence — assault in the first degree — in violation of title 14, section 2251(a)(2)(B), and assault in the third degree, in violation of title 14, section 297(2). On November 3, 2006, the People filed an Amended Information, adding the charge of possession of a dangerous weapon during the commission of a crime of violence — assault in the third degree.

The trial began on November 6, 2006. At the end of the People's case-in-chief, Ritter moved for a judgment of acquittal, which the trial judge denied. Ritter again moved for a judgment of acquittal at the end of his case-in-chief, which the court also denied. Ritter also requested, and the court instructed, the jury on his theory of self-defense. On November 10, 2006, the jury returned a verdict that acquitted Ritter of assault in the first degree (Count 1) and the accompanying charge of possession of a dangerous weapon during a crime of violence (Count 2) but found Ritter guilty of assault in the third degree (Count 3) and the accompanying charge of possession of a dangerous weapon during a crime of violence (Count 4). By motion filed on December 27, 2006, Ritter requested a judgment of acquittal, or, alternatively, a new trial. In a March 3, 2007 Memorandum Opinion, the court denied Ritter's motions.

In a July 5, 2007 Judgment and Commitment, the trial court sentenced Ritter to one year of suspended incarceration for count three and seven and one-half years of incarceration for count four, to be served consecutively. On July 11, 2007, Ritter filed a notice of appeal.

## II. DISCUSSION

### A. Jurisdiction and Standards of Review

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees [and] final orders of the Superior Court . . . ." V.I. CODE ANN. tit. 4 § 32(a) (1997). Because the Judgment and Commitment was entered on July 5, 2007 and the notice of appeal was filed on July 11, 2007, this appeal is timely. *See* V.I. S. CT. R. 5(b)(1) ("In a criminal case, a defendant shall file the notice of appeal in the Superior Court within ten days after the entry of . . . the judgment or order appealed from.").

Our standard of review in examining the Superior Court's application of law is plenary, while findings of facts are reviewed only for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I.

2007). We review the trial court's decision regarding admissibility of evidence for abuse of discretion. *See Corriette v. Morales*, 50 V.I. 202, 205 (2008). Finally, in *Latalladi v. People*, Crim. No. 2007-090, 2009 V.I. Supreme LEXIS 10, *13 (V.I. Feb. 11, 2009), we clarified the standard with which we review a challenge to the sufficiency of the evidence leading to conviction:

> "When appellants challenge the sufficiency of the evidence presented at trial, it is well established that, in a review following conviction, all issues of credibility within the province of the jury must be viewed in the light most favorable to the government." *United States v. Gonzalez*, 918 F.2d 1129, 1132 (3d Cir. 1990) (citing *Glasser v. United States*, 315 U.S. 60, 80, 62 S. Ct. 457, 469, 86 L. Ed. 680 (1942)). The appellate court "must affirm the convictions if a rational trier of fact could have found the defendants guilty beyond a reasonable doubt and the convictions are supported by substantial evidence." *Id.* This evidence "does not need to be inconsistent with every conclusion save that of guilt" in order to sustain the verdict. *United States v. Allard*, 240 F.2d 840, 841 (3d Cir. 1957) (citing *Holland v. United States*, 1954, 348 U.S. 121, 75 S. Ct. 127, 99 L. Ed. 150, *rehearing denied* 348 U.S. 932, 75 S. Ct. 334, 99 L. Ed. 731 (1955)). An appellant who seeks to overturn a conviction on insufficiency of the evidence grounds bears "a very heavy burden." *United States v. Losada*, 674 F.2d 167, 173 (2d Cir. 1982).

## B. The Trial Court Did Not Err in Denying Ritter's Motion for Judgment of Acquittal

The jury found Ritter guilty of assault in the third degree, in violation of title 14, section 297(2), and possession of a dangerous weapon during the commission of a crime of violence, in violation of title 14, section 2251(a)(2)(B). As his first ground for appeal, Ritter argues that, because there was insufficient evidence from which the jury could convict him of either offense, the trial court erred in denying his motion for judgment of acquittal.

### 1. *There Was Sufficient Evidence to Convict Ritter of Assault in the Third Degree as Charged in Count Three*

As to Count Three, assault in the third degree, Ritter argues that the People failed to prove beyond a reasonable doubt that Ritter intended to

harm Powell and that Ritter was not acting in self-defense. In support, Ritter points to the testimony of all of the People's witnesses, including Powell, that Powell was the aggressor in the fight. He contends that he stabbed Powell only to free himself of the chokehold, which was preventing him from breathing properly, and that there was no evidence that Ritter continued to stab Powell once he was released from the chokehold. The People counter that Powell's testimony and the medical evidence as to the severity of Powell's injuries are sufficient evidence from which the jury could conclude that Ritter's use of the knife was intentional and disproportionate to the threat posed by Powell's hands.

Assault in the third degree, as charged in this case, is defined as an assault upon "another with a deadly weapon." 14 V.I.C. § 297(2). Assault is itself defined as the attempt to commit a battery or the making of "a threatening gesture showing in itself an immediate intention coupled with the ability to commit a battery." 14 V.I.C. § 291. As the trial court correctly pointed out, Ritter not only attempted to commit a battery, but was successful in doing so. Because Ritter admitted at trial that he used a knife to stab Powell several times, our inquiry on appeal centers on whether the People sufficiently disproved Ritter's self-defense theory. *See Gov't of the Virgin Islands v. Smith*, 27 V.I. 332, 949 F.2d 677, 680 (3d Cir. 1991) (prosecution must prove beyond a reasonable doubt that defendant did not act in self-defense).

Title 14, section 293(a)(6) states that violence used against a person does not amount to an assault when used in self-defense against unlawful violence to his person. Importantly, section 293(b) clarifies that "where violence is permitted to effect a lawful purpose, only that degree of force must be used which is necessary to effect such purpose." Therefore, we must determine whether there was sufficient evidence from which the jury could conclude that Ritter's use of the knife was greater force than necessary to defend against Powell's attack with his hands. We note that, in denying Ritter's motion for judgment of acquittal, the trial court specifically concluded that "a reasonable jury could have found that the resistance or retaliation [by Ritter] . . . was excessive or out of proportion to the danger, and therefore not justified." (Mem. Op. 5.)

As Ritter correctly points out, overwhelming testimony, including Powell's own testimony, indicates that Powell was the initial aggressor. However, as section 293(b) provides, it was the jury's duty to determine whether Ritter used more force than necessary to escape from Powell's

headlock. The jury heard testimony from Powell that Ritter stabbed him many times about his body, as well as extensive testimony from Dr. Moorman regarding the number and severity of the stab wounds Powell suffered, including testimony that one stab wound caused Powell's lung to collapse. The jury was also presented with photographs of Powell's injuries and testimony from one witness that, after the initial struggle, Ritter and Powell separated momentarily before the fight continued. In contrast, Ritter testified that he pulled the knife from his pocket only because he could not breathe from Powell's headlock, was dizzy, and had blood running into his eyes from Powell's punches.

■ From the testimonial and photographic evidence concerning Powell's stab wounds in combination with the other evidence, a reasonable jury could undoubtedly have found that Ritter's use of the knife was greater force than necessary to escape Powell's hold. *See, e.g., Illinois v. Franklin,* 74 Ill. App. 2d 392, 220 N.E.2d 872, 874-75 (Ill. App. Ct. 1966) ("It was . . . proper for the State to present evidence of the number of stabbings and the injuries sustained by the victim of the assault in order to show that the force used by defendant was unreasonable even if such force was being utilized in defense of his person."); *Morrison v. Indiana,* 613 N.E.2d 865, 868 (Ind. Ct. App. 1993) ("Based on the extent and severity of [the victim's] injuries, the jury could have believed the degree of force [defendant] exerted exceeded the bounds justified to defend himself."); *Louisiana v. Dietrich,* 567 So. 2d 623, 626-27 (La. Ct. App. 1990) (evidence that defendant stabbed victim sixteen times in throat, chest and upper back supports lack of self-defense). Additionally, the jury may well have found it significant that Ritter did not endeavor to retreat when the two boys separated in the middle of the fight. *See, e.g., Weiand v. Florida,* 732 So. 2d 1044, 1049 (Fla. 1999) (recognizing common law duty to retreat).[2] Viewing the evidence in the light most favorable to the People, as the standard of review requires, we hold that substantial evidence supports the jury's decision that Ritter committed assault in the third degree.

---

[2] We do not decide at this time whether Virgin Islands law imposes a duty to retreat under the circumstances here presented.

### 2. There Was Sufficient Evidence to Convict Ritter of Possession of a Dangerous Weapon as Charged in Count Four

As to his Count Four conviction for possession of a dangerous weapon during the commission of a crime of violence, Ritter similarly argues that the People failed to prove beyond a reasonable doubt that he did not act in self-defense. Specifically, he contends that "[b]ut for Powell's aggression, the knife would not have been used" and that "no reasonable fact finder could find that the People established [that] Ritter possessed the knife with the intent [to] unlawfully hurt or harm Powell." (Appellant's Br. 17.)

■ Title 14, section 2251(a)(2)(B) criminalizes the possession of a dangerous weapon during the commission or attempted commission of a crime of violence, as defined in title 14, section 2253(d). Section 2253(d) refers to title 23, section 451(e), which specifically defines assault in the third degree as a crime of violence. As a knife is defined as a dangerous weapon and as assault in the third degree is defined as a crime of violence, the only remaining question on this issue is whether the evidence sufficiently proves that Ritter did not act in self-defense. As discussed previously with respect to Ritter's Count Three conviction, the jury could reasonably have found that Ritter used a greater amount of force than necessary in defending himself from Powell's headlock. *See, e.g., Franklin*, 220 N.E.2d at 874-75; *Morrison*, 613 N.E.2d at 868. Thus, again mindful of our standard of review, we hold that the jury's guilty verdict on Count Four was supported by substantial evidence. Accordingly, the trial court did not err in denying Ritter's motion for judgment of acquittal with respect to either count. *See Gov't of Virgin Islands v. Joseph*, 770 F.2d 343, 345 (3d Cir. 1985).

## C. The Admission of the Treating Physician's Expert Opinion was Harmless Error

During trial preparation, Ritter sent the People a discovery letter dated December 28, 2005, requesting disclosure of any expert witnesses the People intended to call at trial. However, no expert witnesses were disclosed. Consequently, Ritter orally moved *in limine* at trial to preclude the People from eliciting any expert opinion from Dr. Gregory Moorman, the physician who treated Powell at the hospital, regarding the life-threatening nature of Powell's injuries. Citing to Federal Rule of Criminal

Procedure 16(a)(1)(G) and Federal Rules of Evidence 702, 703, and 705, Ritter argued undue prejudice and a denial of due process because he was unable to get a rebuttal expert at such a late stage in the proceedings. Ritter additionally noted that in prior discussions with the People he had been told that Dr. Moorman would testify only as a treating physician and not as an expert.

At trial, the People argued that the local evidence rules, particularly title 5, section 911 of the Virgin Islands Code, provide that when a witness is not testifying as an expert he may testify in the form of opinion or inference as long as the judge finds the testimony rationally based on the perception of the witness and helpful to a clear understanding of his testimony or determination of a fact at issue. The People maintained that the number and severity of Powell's injuries was relevant to whether Ritter intended to murder Powell when he assaulted him with the knife, i.e. whether Ritter committed first degree assault, as charged in Count One of the Information. Accordingly, the People concluded that the court could inquire of Dr. Moorman as a treating physician without qualifying him as an expert and without requiring compliance of Federal Rule of Criminal Procedure 16's notice requirement.

After hearing arguments from both parties, the court stated that the testimony as to the severity of the injuries is not an issue of expert testimony but rather of opinion testimony and that the local evidence rules allow a witness not testifying as an expert to testify in the form of opinion if it is limited to facts personally known to him and facts within the scope of his special knowledge, skill, and experience. The judge ultimately held that he would not allow Dr. Moorman to give any formal, expert opinion, but he would allow the doctor to testify as a treating physician. The court also held that title 5, section 911 of the Virgin Islands Code governs in this case, rather than the Federal Rules of Evidence. Ritter objected to this ruling.

On appeal, Ritter argues that admission of Dr. Moorman's testimony that Powell's injuries were life-threatening and that he could have died within thirty minutes after Powell's lung collapsed was clear error, because there was neither notice by the People nor qualification of

Dr. Moorman as an expert.[3] The People counter that Dr. Moorman's testimony as to the life-threatening nature of Powell's injuries was not expert testimony, because it is "merely common medical knowledge that would be within the province of an emergency room surgeon who routinely works on trauma patients." (Appellee's Br. at 23.)

### 1. *The Trial Court Erred in Allowing Dr. Moorman to Testify Regarding the Life- Threatening Nature of Powell's Injuries*

First, we briefly address the parties' disagreement regarding the appropriate evidentiary rule to be applied in this case. Specifically, the trial judge, in agreement with the People, concluded that title 5, section 911 of the Virgin Islands Code applies to expert testimony in the Superior Court,[4] whereas Ritter argued that Federal Rules of Evidence 702, 703, and 705 are applicable.

Superior Court Rule 7 states that "[t]he practice and procedure in the [Superior] Court shall be governed by the Rules of the [Superior] Court and, *to the extent not inconsistent therewith*, by . . . the Federal Rules of Evidence." (emphasis added). Importantly, the Legislature of the Virgin Islands has adopted virtually all of the 1953 version of the Uniform Rules of Evidence, codified as 5 V.I.C. §§ 771-94. *See* 5 V.I.C. § 772 ("[Chapter

---

[3] Ritter states in his brief that the trial court ruled that it would allow Dr. Moorman to testify as an expert. (Appellant's Br. 17). As the record makes clear, however, the trial court explicitly stated that he would not allow Dr. Moorman to testify as an expert. (Trial Tr., 5, Nov. 9, 2006).

[4] Title 5, section 911 states, in full:

> (1) If the witness is not testifying as an expert his testimony in the form of opinions or inferences is limited to such opinions or inferences as the judge finds (a) may be rationally based on the perception of the witness and (b) are helpful to a clear understanding of his testimony or to the determination of the fact in issue.
> (2) If the witness is testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to such opinions as the judge finds are (a) based on facts or data perceived by or personally known or made known to the witness at the hearing and (b) within the scope of the special knowledge, skill, experience or training possessed by the witness.
> (3) Unless the judge excludes the testimony he shall be deemed to have made the finding requisite to its admission.
> (4) Testimony in the form of opinions or inferences otherwise admissible under this chapter is not objectionable because it embraces the ultimate issue or issues to be decided by the trier of the fact.

(emphasis added).

67] shall apply in every proceeding, conducted by or under the supervision of a court, in which evidence is produced."). Notably, these rules of evidence, which have not been repealed, treat expert testimony differently than the federal rules.[5] In particular, Federal Rule of Evidence 701 includes the additional requirement that non-expert witnesses may testify in the form of opinion only if the opinion is not based on "scientific, technical, or other specialized knowledge."[6] Title 5, section 911(1) of the Virgin Islands Code, however, contains no such specific requirement. Accordingly, it appears that the two rules are inconsistent and that a conflict exists as to the standards by which such evidence is to be admitted in trials in the Superior Court.

In *Phillips v. People*, Crim. No. 2007-037, 2009 V.I. Supreme LEXIS 16, *22 (V.I. Mar. 13, 2009), this Court recognized that Virgin Islands courts have not been consistent in their decisions regarding the evidentiary rules to be applied in local criminal cases. After extensive analysis, we held that the rules adopted by the Legislature apply to criminal cases in the Superior Court. Accordingly, in this case, we apply, as did the trial judge, the expert testimony provisions contained in title 5, section 911.

Having determined that the title 5, section 911 applies in this case, we now address Ritter's contention that expert opinion testimony was admitted despite the People's failure to disclose any expert and despite the fact that Dr. Moorman was never qualified as an expert. When describing the various wounds he observed on Powell's body, Dr. Moorman testified that "[a]nytime you have a zone two neck injury . . . you know it's life-threatening and needs to be explored." (Trial Tr., 136, Nov. 9, 2006). As stated above, the People contend that Dr. Moorman's testimony was admissible as a non-expert opinion

---

[5] We note that the Uniform Rules of Evidence were last revised in 2005 and now largely resemble the Federal Rules of Evidence. However, the Legislature has not amended 5 V.I.C. §§ 771-94 to reflect the changes to the Uniform Rules of Evidence.

[6] Federal Rule of Evidence 701 provides that:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

because it was based on his perception of Powell's injuries and aided in the determination of a fact in issue. *See* 5 V.I.C. § 911(1).

 Unlike the correlating Federal Rule of Evidence 701, title 5, section 911(1) does not have the third requirement that lay testimony may not be based on scientific, technical, or other specialized knowledge. *See, e.g., Musser v. Gentiva Health Servs.*, 356 F.3d 751, 756 n. 2 (7th Cir. 2004) ("[Under the federal rule] a treating doctor . . . is providing expert testimony if the testimony consists of opinions based on 'scientific, technical, or other specialized knowledge' regardless of whether those opinions were formed during the scope of interaction with a party prior to litigation." Significantly, however, title 5, section 911(2) indirectly incorporates the same standard as Federal Rule 701 for determining when testimony is considered expert:

> If the witness is testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to such opinions as the judge finds are (a) based on facts or data perceived by or personally known or made known to the witness at the hearing and *(b) within the scope of the special knowledge, skill, experience or training possessed by the witness.*

(emphasis added). Thus, when a witness testifies in the form of an opinion regarding a fact that is "within the scope of [his] special knowledge, skill, experience, or training," he is not testifying as a non-expert.

 Notably, other courts construe testimony that an injury is life-threatening as expert testimony. *See, e.g., Bolanos v. United States*, 938 A.2d 672, 678-79 (D.C. 2007) ("There was no expert testimony presented regarding the effects of the knife wounds, or whether these types of wounds could be considered life-threatening."); *Delaware v. Tice*, Nos. IK91-09-0310-R1-IK91-09-0314-RI, 1995 Del. Super. LEXIS 373, *14-15 (Del. Super. Ct. Aug. 21, 1995) (medical expert explained full extent of victim's injuries and testified that injury to spine was life-threatening); *Hawaii v. Ah Choy*, 70 Haw. 618, 780 P.2d 1097, 1102 (Haw. 1989) ("Members of the jury, not being trained in medicine, benefited from the expert testimony on the life threatening nature of stab wounds to the internal structures located close to the wound actually inflicted."); *Kansas v. Rogers*, 78 P.3d 497, at *2 (Kan. Ct. App. 2003) (unpublished) (nurse's expert testimony that injuries were life-threatening was " 'within

the scope of the special knowledge, skill, experience or training possessed by the witness.' " (construing rule identical to 5 V.I.C. § 911(2))); *North Carolina v. Bearthes*, 329 N.C. 149, 405 S.E.2d 170, 177 (1991) (permitting expert testimony by medical examiner who performed autopsy as to life-threatening nature and severity of wounds); *Ohio v. Purdon*, No. CA97-03-009, 1997 Ohio App. LEXIS 4982, *5 (Ohio Ct. App. Nov. 10, 1997) ("The state also presented the expert testimony concerning the seriousness of Howard's injuries. Dr. Scott Longevin, the doctor who initially treated Howard, testified that Howard's head injury was life threatening."); *Johnston v. Texas*, 150 S.W.3d 630, 639 (Tex. App. 2004) ("Expert testimony confirmed that the injury was life-threatening . . . .").

■ In this case, Dr. Moorman testified that Powell's neck injury was life-threatening and that a deep stab wound to the chest can cause the lung to deflate and push the lung against the heart, moving the heart out of place, likely resulting in death within fifteen minutes. (Trial Tr., 128-29, Nov. 9, 2006.) As a treating physician, Dr. Moorman may testify to the condition discovered in examining Powell and to the particular treatment rendered without being considered an expert witness. However, his statements regarding the life-threatening nature of Powell's injuries, the effect that a deflated lung has on the heart, and the length of time in which a victim of a stab wound to the chest is likely to die are clearly based upon his special knowledge, experience, and training. Thus, in accordance with title 5, section 911 and the multitude of jurisdictions construing such testimony as expert opinion, we hold that Dr. Moorman's statement as to the life-threatening nature of Powell's injuries was expert opinion, because it was "within the scope of [his] special knowledge, skill, experience, or training" as a trauma surgeon. Accordingly, the trial court erred in admitting Dr. Moorman's expert opinion testimony.

### 2. The Trial Court's Error in Admitting the Expert Opinion was Harmless

Importantly, holding that the trial court erred in admitting Dr. Moorman's expert opinion does not end our inquiry. Instead of claiming error in the trial judge's failure to qualify Dr. Moorman as an expert prior to permitting his expert testimony, Ritter contends that the People's failure to provide notice that Dr. Moorman would give expert testimony resulted in prejudice to Ritter. Consequently, we must

determine whether the admission of Dr. Moorman's statement prejudiced Ritter's case so as to require a reversal of his convictions.

■ Federal Rule of Criminal Procedure 16(a)(1)(G) states:

> At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under [the rules of evidence governing expert testimony] during its case-in-chief at trial. . . . The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

As stated above, Ritter's discovery demand letter requested from the People disclosure of any expert opinions, but the People failed to provide any such disclosure. Federal Rule of Criminal Procedure 16(d)(2) provides that when a party fails to comply with Rule 16 the court may order the People to provide disclosure, grant a continuance, exclude the undisclosed testimony, or enter any other order that is just under the circumstances. In accordance with the rule's permissive language, a trial judge has broad discretion in determining whether exclusion of the undisclosed testimony is the appropriate remedy for the People's failure to disclose. *See United States v. Lopez*, 44 V.I. 311, 271 F.3d 472, 483 (3d Cir. 2001) (stating that Rule 16(d)(2)'s use of the word "may" means that district court is not required to do anything when the state fails to disclose an expert); *United States v. Sarracino*, 340 F.3d 1148, 1170 (10th Cir. 2003) (abuse of discretion standard for judge's decision under Rule 16(d)(2)).

■ However, even if we were to accept that the trial court erred in not granting Ritter's motion to exclude Dr. Moorman's expert testimony regarding the life-threatening nature of Powell's injuries, this Court must determine whether such an error was harmless. As we stated in *St. Louis v. People*, "[w]ithout a showing of prejudice, the error, if any, is harmless." No. 2007-086, 2008 V.I. Supreme LEXIS 40, *7 (V.I. Oct. 10, 2008). *See also United States v. Mathis*, 264 F.3d 321, 342 (3d Cir. 2001) ("Our final step is to consider whether the District Court's error in excluding parts of Dr. Loftus's testimony was legally harmless. . . . This court has held that a non-constitutional error committed at trial does not warrant reversal in circumstances where it is highly probable that the error did not contribute to the judgment. And the applicable standard for [h]igh probability requires that we have a sure conviction that the error did not prejudice the

defendants." (internal quotations and citations omitted)); *United States v. Sarracino*, 340 F.3d 1148, 1171 (10th Cir. 2003) (applying harmless error standard after concluding evidence improperly admitted)); *United States v. Jones*, 913 F.2d 174, 178 (4th Cir. 1990) (analyzing whether erroneous use of expert testimony was harmless); *Ferguson v. United States*, 866 A.2d 54, 65 (D.C. 2005) (determining whether defendant was prejudiced by government's failure to comply with Rule 16). In considering whether there is harmless error, we note that "unless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction, reversal is not required." *Schneble v. Florida*, 405 U.S. 427, 432, 92 S. Ct. 1056, 31 L. Ed. 2d 340 (1972); *see also Mathis*, 264 F.3d at 342 ("[W]e may be firmly convinced that the error was harmless without disproving every 'reasonable possibility' of prejudice.").

In this case, Ritter does not point to any particular prejudice that he suffered as a result of the admission of Dr. Moorman's testimony that Powell's injuries were life-threatening. He summarily states that the testimony "affected [his] substantive rights and was unduly prejudicial" and that "[w]hile he cannot state with certainty the effect the testimony had on the jury's deliberation, it is fair to conclude that it was adverse." (Appellant's Br. 18-19.) Our examination of the record, however, reveals that there is no reasonable possibility that the admission of Dr. Moorman's expert opinion prejudiced Ritter's case. Considering the acceptable portion of Dr. Moorman's non-expert testimony as Powell's treating physician, as well as the testimony of various other witnesses, a jury could reasonably have concluded that Powell's injuries were life-threatening. *See, e.g., United States v. Rainbow*, 178 Fed. Appx. 622, 625 (8th Cir. 2006) (holding that jury could reasonably conclude that victim's injuries were life-threatening from photographs depicting and testimony explaining that beating by defendant caused "a scalp laceration, intercranial bleeding, a fractured nose, and a fractured orbital socket"); *Todd v. Maryland*, 161 Md. App. 332, 868 A.2d 944, 954 (Md. Ct. Spec. App. 2005) (holding that expert opinion not necessary for jury to conclude that injuries were life-threatening because testimony and medical records established that victim suffered "severe cranial injury" that bled profusely and required several surgeries to repair); *Lambert v. Palmateer*, 187 Ore. App. 528, 69 P.3d 725, 730 (Or. Ct. App. 2003) (noting that expert testimony is unnecessary when the substantial risk of

369

death posed by an injury is apparent to a layperson and citing case where it was within jury's common experience to infer that a gunshot wound to the chest with a large caliber handgun from a distance of no more than three feet posed a substantial risk of death).

In this case, Dr. Moorman testified extensively as to the type and location of Powell's injuries, including a collapsed lung. In addition, Powell's medical records, as well as numerous photographs depicting the stab wounds, were admitted into evidence. The jury also heard testimony from the school's principal as to the substantial amount of blood flowing from Powell's neck and back wounds. Therefore, even if the trial court had precluded Dr. Moorman's testimony as to the life-threatening nature of Powell's wounds, the jury reasonably could have concluded from the ample other testimony that his injuries were life-threatening. *See Schneble*, 405 U.S. at 432, 92 S. Ct. at 1060 ("[W]e conclude that the 'minds of an average jury' would not have found the State's case significantly less persuasive had the testimony as to Snell's admission been excluded. The admission into evidence of these statements, therefore, was at most harmless error."). Moreover, we note that Dr. Moorman's testimony regarding the life-threatening nature of Powell's injuries was offered to prove the intent to murder element of first degree assault, a charge for which the jury found Ritter not guilty. *See, e.g.*, *Montana v. Teters*, 321 Mont. 379, 91 P.3d 559, 563 (Mont. 2004) (error harmless because defendant acquitted of charge for which alleged erroneous evidence was admitted). Accordingly, as there is no reasonable likelihood that Ritter suffered prejudice from the admission of Dr. Moorman's expert opinion, the trial judge's error in admitting the expert opinion testimony was harmless.

## D. Ritter's Right to an Fair Trial Was Not Violated

As his final grounds for appeal, Ritter maintains that his right to a fair trial by an impartial jury was violated when the trial court failed to dismiss the jury venire or instruct the petit panel that a defendant has a right to cross-examine witnesses. During jury selection, while the court was in recess, an assistant public defender told defense counsel that he had overheard one member of the jury venire express an opinion that Ritter was guilty before the trial had begun. At a side bar conference during *voir dire*, however, defense counsel was unable to identify which prospective juror allegedly made the statement. Thus, the court did not

dismiss the venire panel. Notably, after the parties had exercised their challenges and the petit panel was seated, the trial court asked whether the parties were satisfied with the jury, and defense counsel answered in the affirmative.

Ritter additionally argues that his right to a fair trial was violated when the court refused to immediately instruct the jury after defense counsel heard several members "sucking their teeth" and uttering comments, such as "[W]hy you asking that question, how she supposed to know," during defense counsel's cross-examination of two of the People's witnesses. (Trial Tr., 91, Nov. 9, 2006.) Defense counsel specifically requested an immediate jury instruction that Ritter has a right to cross-examine witnesses and that the jury should keep an open mind until the close of all the evidence. The trial judge stated that he would give the jury such an instruction at a later time when he usually instructs the jury. Additionally, the trial judge stated that the jury was merely reacting to the heated exchange between defense counsel and the People's witnesses. In denying Ritter's post-trial motion for a new trial, the trial court also noted that it had already "instructed the jury that questions and statements by lawyers are not evidence and further informed the jury that lawyers had a duty to object to evidence and that jurors should not be prejudiced in any way against either the lawyer or his client." (Mem. Op. 6.) During final instructions, the court similarly instructed the jury on the adversarial role of lawyers.

■■■ On appeal, the People contends that the trial court did not err in denying Ritter's motion for a new trial because Ritter did not demonstrate that the jury was actually or impliedly biased. When a defendant asserts a general Sixth Amendment challenge as to the partiality of a jury based upon circumstances occurring outside of *voir dire*, "the remedy . . . is a hearing in which the defendant has the opportunity to prove actual bias." *Smith v. Phillips*, 455 U.S. 209, 215, 102 S. Ct. 940, 945, 71 L. Ed. 2d 78 (1982); *see also Fitzgerald v. Greene*, 150 F.3d 357, 364 (4th Cir. 1998). However, because "a convicted defendant should not be allowed to waste the time of a [trial] judge or inconvenience jurors merely to conduct a fishing expedition," a hearing is necessary only when reasonable grounds exist to believe that the jury may have been exposed to an extraneous influence. *United States v. Moten*, 582 F.2d 654, 667 (2d Cir. 1978); *see, e.g.*, *United States v. Old Chief*, 121 F.3d 448, 451 (9th Cir. 1997) ("Old Chief argues that the district court should have conducted [a post-verdict evidentiary] hearing to determine whether [a] juror's whispers during the

jury poll improperly influenced the jury's deliberations. Despite Old Chief's attempt to characterize the whispers of one juror to another during the jury poll as an 'outside influence,' he made no showing of improper external influence sufficient to warrant a post-verdict evidentiary hearing."); *United States v. Barshov*, 733 F.2d 842, 851 (11th Cir.1984) ("The duty to investigate arises only when the party alleging misconduct makes an adequate showing of extrinsic influence to overcome the presumption of jury impartiality."); *United States v. Barber*, 668 F.2d 778, 787 (4th Cir. 1982) ("[S]omething more than such an unverified conjecture [of juror bias] is required to justify grant of a new trial.").

In this case, both at trial and on appeal, Ritter failed to raise any indication of the sort of extraneous information[7] or outside influence that may have prejudiced the empanelled jury against him. *See, e.g., Capella v. Baumgartner*, 59 F.R.D. 312, 315 (S.D. Fla. 1975) (no post-verdict evidentiary hearing necessary without some indication that juror misconduct actually occurred); *United States v. Hall*, 424 F. Supp. 508, 538-39 (W.D. Okla. 1975) ("Defendants cite no 'extraneous prejudicial information' or 'outside influence' having been improperly brought to the jury's attention . . . [T]he desired interviews of the trial jurors on these assertions . . . are obviously sought for the purpose of browsing among the thoughts of the members of the jury interviews which would amount to a pure fishing expedition inspired by adverse verdicts of conviction. The Defendants cite no authority that permits such an excursion unsupported at the outset by any allegation of impropriety."); *but see Moten*, 582 F.2d at 666 ("[T]he instant case is an unusual one . . . because a series of events [including improper private contact with a juror, who was ultimately excused,] occurred at trial that support a reasonable suspicion that the jury may have been corrupted. An inquiry is certainly warranted."). In fact, Ritter admits on appeal that he "cannot state with certainty whether extraneous information or outside influence improperly bore upon the jury decision." (Appellant's Br. at 20.)

 Moreover, when asked by the trial judge, defense counsel could not identify which jurors allegedly expressed bias against him during jury

---

[7] " 'Extraneous influence' has been construed to cover publicity received and discussed in the jury room, consideration by the jury of evidence not admitted in court, and communications or other contact between jurors and third persons, including contacts with the trial judge outside the presence of the defendant and his counsel." *Gereau*, 523 F.2d at 149.

selection. In fact, he was unable to state whether those jurors had later been seated on his petit panel. As to the jurors on the petit panel, the allegation of bias stemmed solely from defense counsel's interpretation of the jury's reaction to his cross-examination of the People's witnesses. In the absence of any evidence of juror misconduct, it is a more reasonable conclusion that the teeth-sucking and murmurings by the certain jurors were a reaction to defense counsel's aggressive questioning of the People's witnesses, as the trial judge opined. Furthermore, the only remedy sought by Ritter at trial was a generalized instruction that the jury should keep an open mind and that a defendant has a right to cross-examine the People's witnesses. Notably, the trial court twice instructed the jury about the adversarial roles of attorneys and that the jury should consider only the testimony and other admitted evidence in making their decision. Finally, that the jury did not convict Ritter of the greater charge of assault in the first degree diminishes Ritter's claim that the jury was biased against him. *See United States v. DiSalvo*, 34 F.3d 1204, 1226 (3d Cir. 1994) ("[W]hen the jury is instructed to base its verdict solely on the evidence and it acquits the defendant of certain counts, such factors indicate that the jury was not biased.").

█ Because Ritter did not raise the slightest indication that the jury was improperly influenced by extraneous information and could not state which, if any, particular juror was biased against him, there is no adequate ground upon which to hold that the trial court erred in denying his motion for a new trial. Accordingly, we hold that Ritter's right to an impartial jury was not violated.

## III. CONCLUSION

Because there was sufficient evidence to support Ritter's Count Three and Count Four convictions, this Court holds that the trial court did not err in denying Ritter's motion for a judgment of acquittal. Additionally, as there was substantial evidence from which the jury could conclude on its own that Powell's injuries were life-threatening, the trial court's error in admitting the treating physician's expert opinion was harmless. Finally, we hold that the trial court did not err in denying Ritter's motion for a new trial, because Ritter failed to make an adequate showing that any member of the jury was influenced by extraneous information. Accordingly, we affirm the trial court's July 5, 2007 Judgment and Commitment.