# NICOLE LATALLADI, Appellant/Defendant
## v.
# PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff

S. Ct. Crim. No. 2007-090

Supreme Court of the Virgin Islands

February 11, 2009

PAULA D. NORKAITIS, ESQ., St. Thomas, USVI, *Attorney for Appellant.*

PAMELA R. TEPPER, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorneys for Appellee.*

CABRET, *Associate Justice*; SWAN, *Associate Justice*, and MEYERS, *Designated Justice.*[1]

## OPINION OF THE COURT

(February 11, 2009)

PER CURIAM. Appellant, Nicole Latalladi (hereafter "Latalladi"), requests this Court to overturn her convictions for forgery and assuming the character of another and order a new trial on the grounds that (1) Latalladi's rights under the Sixth Amendment's Confrontation Clause were violated; (2) the Superior Court erred in admitting hearsay evidence; (3) the Superior Court committed reversible error by failing to take the steps necessary to cure juror confusion regarding essential elements of the charged offenses; and (4) Latalladi was convicted on insufficient evidence to find her guilty of any of the charges against her. For the reasons that follow, we shall affirm the Superior Court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Latalladi and Veronica Berry (hereafter "Berry") were neighbors whose children did not get along. On November 12, 2004, Berry's daughter, Taresia Allen, told Latisha Leerdam — Latalladi's daughter — that she was going to poison Latalladi's dog, Queenie. That same day, Latalladi observed Queenie running around in circles and spewing saliva and a green substance. Latalladi, accompanied by her daughter and boyfriend, took Queenie to a veterinary clinic run by Dr. John Moore (hereafter "Moore").

Upon her arrival at the clinic, Dr. Moore's employee, Robin Slaughter (hereafter "Slaughter"), provided Latalladi with certain routine

---

[1] Chief Justice Rhys Hodge is recused from this matter. The Honorable Ishmael A. Meyers, Sr., has been designated in his place pursuant to title 4, section 24(a) of the Virgin Islands Code.

documents to complete. Latalladi signed these documents using the name "Veronica Berry," and provided Berry's mailing address and work information. However, Latalladi listed her boyfriend's cell phone number on the form. After Dr. Moore informed Latalladi that her dog was pregnant and needed a cesarean section, Carolyn Briggs (hereafter "Briggs"), a veterinary technician employed at the clinic, provided Latalladi with a "consent for surgery" form. (Trial Tr. vol. 1, 72, May 21, 2007.) Briggs observed Latalladi signing this form as "Veronica Berry," but only after her daughter refused to sign it. According to Moore and other staff members, Latalladi was always referred to as "Ms. Berry," and Latalladi made no attempt to correct them. When Moore subsequently called Latalladi on the cell phone number she provided and asked for "Veronica Berry" to pick up her dog, Latalladi responded in the affirmative and went to the veterinary clinic to pick up Queenie.

Although Latalladi deposited $100.00 when she brought her dog in for treatment, the remaining balance of $261.00 was subsequently billed to Berry at the address Latalladi wrote on the information forms. At some point after the surgery, Berry went to the veterinary clinic to inquire about an invoice she received for a dog's surgery, informing them that she did not own a dog. After verifying Berry's identity with her driver's license, Moore realized that Berry was not the same individual who had brought in Queenie and had claimed to be "Veronica Berry." Eventually, everyone discovered that the dog belonged to Latalladi.

Upon discovering that a warrant had been issued for her arrest, Latalladi purchased a money order in the amount of $300.00 and went to the veterinary clinic to pay the outstanding bill. Latalladi identified herself as "Nicole Latalladi" and the owner of Queenie. When Moore spoke to Latalladi, she stated that her daughter had filled out the form and that she wanted to pay the bill for her dog's surgery. Latalladi provided her driver's license, paid the bill, and left.

Latalladi was arrested on June 15, 2005, on charges of forgery and assuming the character of another. After a jury trial that began on May 21, 2007, and ended on May 22, 2007, Latalladi was convicted on both counts. On July 13, 2007, the Superior Court sentenced Latalladi to three years imprisonment for forgery and one year incarceration for acting in an assumed character, with the sentences to be served concurrently. Latalladi's notice of appeal was filed on July 16, 2007.

## II. DISCUSSION

### A. Jurisdiction

"The Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." V.I. CODE ANN. tit. 4 § 32(a). Because Latalladi was sentenced on July 13, 2007, and her Notice of Appeal was filed on July 16, 2007, the Notice of Appeal was timely filed. *See* V.I. S. CT. R. 5(b)(1).

### B. Latalladi's Rights Under the Sixth Amendment's Confrontation Clause Were Not Violated.

Latalladi, relying on *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), argues that her rights under the Sixth Amendment's Confrontation Clause were violated because the trial court allowed the People of the Virgin Islands (hereafter "People" or "Appellee") to admit testimony of statements attributed to Berry into evidence even though Berry was not present at trial and unavailable for cross-examination.[2] In particular, Latalladi argues that testimony by Moore and Briggs concerning statements Berry made during her visit to the veterinary clinic were inadmissible. For instance, Latalladi contends that Moore should not have testified that "a . . . lady came in and said she was Veronica Berry and she didn't own a dog," (Trial Tr. vol. 1 at 123-24) and that Briggs should not have stated that "[Berry] asked us why [we] were sending her this invoice because she did not own a dog." (Trial Tr. vol. 1 at 103.) The People argue that the Confrontation Clause is not implicated because Berry was never called as a witness and no testimonial evidence attributed to Berry was submitted at trial.

The standard of review for challenges under the Sixth Amendment's Confrontation Clause is plenary. *United States v. Mitchell*, 145 F.3d 572, 576 (3d Cir. 1998). In *Crawford*, the United States Supreme Court distinguished between testimonial and non-testimonial hearsay evidence, holding that admitting testimonial hearsay evidence violates the Confrontation Clause unless the declarant is unavailable and the accused

---

[2] Because Latalladi does not appear to have raised this argument before the trial court, her claim is reviewed for plain error. *See United States v. Mussare*, 405 F.3d 161, 167 (3d Cir. 2005).

had a prior opportunity to cross-examine the declarant, while non-testimonial hearsay is excluded from Confrontation Clause scrutiny. *Crawford*, 541 U.S. at 68, 124 S. Ct. at 1374. However, the Supreme Court failed to provide clear definitions of "testimonial" and "non-testimonial," deciding to "leave for another day any effort to spell out a comprehensive definition of 'testimonial.' " *Id.*

■ Nevertheless, the Court set forth a "core class of 'testimonial' statements" that includes "ex parte in-court testimony or its functional equivalents — that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially," and "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.* at 51-52. *See also Hinton*, 423 F.3d at 360; *United States v. Summers*, 414 F.3d 1287, 1302 (10th Cir. 2005) ("We conclude that the 'common nucleus' present in the formulations which the Court considered centers on the reasonable expectations of the declarant. It is the reasonable expectation that a statement may be later used at trial that distinguishes the flippant remark, proffered to a casual acquaintance from the true testimonial statement." (internal citation omitted)); *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004) ("The proper inquiry, then, is whether the declarant intends to bear testimony against the accused. That intent, in turn, may be determined by querying whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime."); *Horton v. Allen*, 370 F.3d 75, 84 (1st Cir. 2004) (holding that statement made in a private conversation to an individual not affiliated with law enforcement is non-testimonial); *United States v. Reyes*, 362 F.3d 536, 540 n.4 (8th Cir. 2004) (observing that statements between co-conspirators are non-testimonial).

■ Given the Supreme Court's guidance and lower court interpretations of *Crawford*, it is inappropriate to characterize the hearsay evidence at issue in this case as testimonial. Both Moore and Briggs are private individuals not affiliated with law enforcement, and when Berry made the statements at issue she had no knowledge of the facts that led Moore's clinic to send her a bill for veterinary services, let alone that a crime may have been committed. Rather, Berry was merely disputing a bill she believed she received in error. Under these circumstances, it is not

142

reasonable to believe that Berry uttered these statements with a reasonable expectation that they would later be used in a criminal trial. Accordingly, we hold that the statements attributed to Berry were non-testimonial and their admission did not violate the Confrontation Clause.

## C. The Superior Court Did Not Admit Hearsay Evidence

■ Latalladi contends that the testimony proffered by Briggs, even if not rising to a violation of the Confrontation Clause, constituted inadmissible hearsay.[3] The People argue that this testimony was properly admitted because the information was not offered to prove the truth of the matter asserted.

■ We agree with the People. Here, Briggs's testimony was introduced to provide background information to explain what circumstances caused the clinic — and eventually law enforcement — to believe that the crimes of forgery and assuming the character of another may have occurred. *See Garner v. Mo. Dep't. of Health*, 439 F.3d 958, 960 (8th Cir. 2006) (holding that supervisor's testimony regarding unsubstantiated allegation against employee not hearsay because it explained what initiated the investigation); *United States v. Aguwa*, 123 F.3d 418, 421 (6th Cir. 1997) (allowing federal agent to testify to out of court statements made by informant because purpose of evidence was to provide background information and not establish the truth of the matter).

## D. The Superior Court Did Not Err in its Supplemental Jury Instructions

■ ■ Latalladi alleges that the trial court erred when it re-read its initial jury instruction to the jury instead of providing an entirely new instruction in response to the jury's request for the definition of "forgery." When a party does not object to a supplemental jury instruction, this Court "may reverse only if the alleged error amounted to plain error." *United States v. Pungitore*, 910 F.2d 1084, 1147 (3d Cir. 1990). Furthermore, " 'a defendant cannot complain on appeal of alleged errors

---

[3] "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *Gov't of the Virgin Islands v. Williams*, 496 V.I. 955, 961 (D.V.I. App. Div. 2008) (internal quotation marks and citations omitted). *See also* 5 V.I.C. § 932; FED. R. EVID. 801(c) (defining hearsay).

invited or induced by himself,' " for " 'if there was any error at all, it was "invited error" and cannot now be a basis for reversal.' " *United States v. Console*, 13 F.3d 641, 660 (3d Cir. 1993) (quoting *United States v. Lewis*, 524 F.2d 991, 992 (5th Cir. 1975), *cert. denied*, 425 U.S. 938, 96 S. Ct. 1673, 48 L. Ed. 2d 180 (1976) and *Herman v. Hess Oil Virgin Islands Corp.*, 524 F.2d 767, 772 (3d Cir. 1975)). Because Latalladi not only failed to object to the supplemental instruction, but actually suggested that the judge read the statutory definition of forgery again in lieu of his initial idea of providing the definition contained in BLACK'S LAW DICTIONARY, (Trial Tr. vol. 2, 70-71, May 22, 2007), the invited error doctrine precludes Latalladi from objecting to the instruction on appeal.

██ Nevertheless, it is clear that no error, let alone plain error, has occurred. It is well established that it is "the judge's responsibility to give the jury the required guidance by a lucid statement of the relevant legal criteria" and "[w]hen a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy." *Bollenbach v. United States*, 326 U.S. 607, 612-13, 66 S. Ct. 402, 90 L. Ed. 350 (1946); *accord Beardshall v. Minuteman Press Int'l, Inc.*, 664 F.2d 23, 28 (3d Cir. 1981) (observing that "[g]iving supplemental instructions to the jury is usually a delicate and sensitive task requiring the exercise of judgment and skill" and that a trial judge "has a duty to respond to a jury's request for specific instructions and the form and extent of supplemental instructions are within the sound discretion of the court."); *Walsh v. Miehle-Goss-Dexter, Inc.*, 378 F.2d 409, 415 (3d Cir. 1967) (holding that once "a jury makes known its difficulty . . . the trial judge is required to give such supplemental instructions as may be necessary. . . ."). Here, the jury requested the trial court to provide it with the legal definition of "forgery." (Trial Tr. vol. 2 at 70.) Upon the recommendation of Latalladi's counsel, the judge chose to reread the definition of "forgery" provided in the relevant statute. Unlike the judge in *Bollenbach*, who first failed to answer the jury's question and later provided a legally incorrect instruction, the trial judge in this case promptly responded to the jury's specific request for the definition of forgery with a legally correct definition of forgery approved by both the prosecutor and defense counsel. Accordingly, the trial court did not commit plain error when it issued its supplemental jury instruction.

## E. The Evidence was Sufficient to Convict Latalladi on Both Counts

Finally, Latalladi argues that the evidence presented at trial was insufficient to sustain convictions for forgery and acting in an assumed character. "When appellants challenge the sufficiency of the evidence presented at trial, it is well established that, in a review following conviction, all issues of credibility within the province of the jury must be viewed in the light most favorable to the government." *United States v. Gonzalez*, 918 F.2d 1129, 1132 (3d Cir. 1990) (citing *Glasser v. United States*, 315 U.S. 60, 80, 62 S. Ct. 457, 469, 86 L. Ed. 680 (1942)). The appellate court "must affirm the convictions if a rational trier of fact could have found the defendants guilty beyond a reasonable doubt and the convictions are supported by substantial evidence." *Id.* This evidence "does not need to be inconsistent with every conclusion save that of guilt" in order to sustain the verdict. *United States v. Allard*, 240 F.2d 840, 841 (3d Cir. 1957) (citing *Holland v. United States*, 348 U.S. 121, 75 S. Ct. 127, 99 L. Ed. 150 (1954), *rehearing denied*, 348 U.S. 932, 75 S. Ct. 334, 99 L. Ed. 731 (1955)). An appellant who seeks to overturn a conviction on insufficiency of the evidence grounds bears "a very heavy burden." *United States v. Losada*, 674 F.2d 167, 173 (2d Cir. 1982).

According to Latalladi, the People's evidence is insufficient because Moore and Briggs, when asked to identify the individual who took Queenie into the clinic and called herself "Veronica Berry," were unable to identify Latalladi in a photo array shown to them in March 2005, four months after the incident. Furthermore, Latalladi urges this Court to consider the fact that the People did not call Berry to the stand to testify as to her identity, that she did not own a dog, and that she did not sign the relevant documents.

We find that Latalladi has failed to meet her burden. Though Moore and Briggs could not identify Latalladi from a photo array in March 2005, both witnesses identified Latalladi at trial and unambiguously testified that Latalladi identified herself as "Veronica Berry" and signed the documents at issue. In addition, Slaughter unequivocally identified Latalladi as the individual who signed the consent forms as "Veronica Berry." (Trial Tr. vol. 1 at 76-77.) Likewise, Kathryn Houston, a Department of Justice employee who worked with Latalladi, testified that Latalladi discussed the unpaid clinic bill with her

145

after she received notice that a warrant was issued for her arrest and was advised to pay the unpaid bill, (App. vol. I Trial Tr. at 136-39), which documentary evidence showed she eventually did. (Supp. App. at 5.) Likewise, a police officer testified that the driver's license number on the money order form matched the one on Nicole Latalladi's driver's license. (Trial Tr. vol. I at 155-60.) The People also introduced the hospital forms into evidence, which allowed the jury to compare the "Nicole Latalladi" signature from the money order with the "Veronica Berry" signatures on the other forms and determine that they were made by the same person. (Supp. App. at 5.) This evidence, when viewed in the light most favorable to the People, is more than sufficient to convict Latalladi on both counts. Accordingly, we decline to reverse the trial court and affirm Latalladi's convictions.

## III. CONCLUSION

The trial court's decision to allow testimony concerning Berry did not violate Latalladi's rights under the Sixth Amendment's Confrontation Clause because it was non-testimonial in nature. Similarly, Briggs's testimony did not constitute a hearsay violation becase it was not introduced for the truth of the matter. Furthermore, the trial court did not err when it issued its supplemental jury instructions. Because the People established sufficient evidence of Latalladi's guilt, this Court affirms her convictions.

## ORDER OF THE COURT

**AND NOW**, consistent with the reasons outlined in the Opinion of the Court of even date, it is hereby

**ORDERED** that the Superior Court's July 13, 2007 judgment is **AFFIRMED**; and it is further

**ORDERED** that copies of this order be directed to the parties.

**SO ORDERED** this 11th day of February, 2009.