**JULIAN FRANCIS, Appellant/Defendant**
v.
**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Crim. No. 2007-0136

Supreme Court of the Virgin Islands

September 9, 2010

JOSEPH J. MINGOLLA, ESQ., St. Thomas, USVI, *Attorney for Appellant.*

315

RICHARD S. DAVIS, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(September 9, 2010)

HODGE, C.J. Appellant Julian Francis (hereafter "Francis") requests that this Court reverse the Superior Court's December 7, 2007 Judgment on the grounds that (1) the evidence is not sufficient to sustain his convictions for littering in violation of 19 V.I.C. § 1563(5) and 19 V.I.R.R. § 1560-2(j); (2) the Superior Court abused its discretion by not permitting him to cross-examine and impeach the arresting officer; and (3) his due process rights were violated because the complaining witness was not identified and the arresting officer failed to follow the correct procedure for issuing citations. For the reasons that follow, we affirm in part and reverse in part the Superior Court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 22, 2007, Walter Richardson (hereafter "Richardson"), an environment health enforcement officer employed by the Department of Health, and Emile Proctor (hereafter "Proctor"), a Virgin Islands Police Officer, arrived at 394-4 Anna's Retreat, St. Thomas, after a complaint had been filed with the Abandoned Junked Car Task Force, of which they were both members. After arriving at the property — which was jointly owned by Francis and his wife — Richardson cited Francis for maintaining junk vehicles visible from a public road in violation of 19 V.I.R.R. § 1560-2(j) and for permitting the accumulation of waste on one's property in a manner that invites breeding of mosquitoes in violation of 19 V.I.C. § 1563(5). The basis for both citations was the presence of approximately fifty vehicles on the property, several of which were missing doors and windshields or otherwise appeared inoperable. (JA. at 21, 35.)

The Superior Court held a bench trial on both littering charges on December 5, 2007, at which Francis appeared *pro se.* After hearing testimony from Richardson, Proctor, and Francis, the Superior Court found Francis guilty on both charges and, on the same day, orally

sentenced Francis. The Superior Court memorialized its oral sentence in a December 7, 2007 Judgment, and Francis filed his notice of appeal on December 17, 2007.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

The Supreme Court has jurisdiction over this appeal which arose from the final judgment of the Superior Court pursuant to V.I. CODE ANN. tit. 4 § 32(a). Because the Superior Court entered its Judgment on December 7, 2007, and Francis filed his notice of appeal on December 17, 2007, the notice of appeal was timely filed. *See* V.I.S.Ct.R. 5(b)(1).

Our review of the Superior Court's application of law is plenary, while findings of fact are reviewed only for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). In *Latalladi v. People*, 51 V.I. 137 (V.I. 2009), this Court clarified the standard with which we review a challenge to the sufficiency of the evidence leading to conviction:

> "When appellants challenge the sufficiency of the evidence presented at trial, it is well established that, in a review following conviction, all issues of credibility within the province of the jury must be viewed in the light most favorable to the government." *United States v. Gonzalez*, 918 F.2d 1129, 1132 (3d Cir. 1990) (citing *Glasser v. United States*, 315 U.S. 60, 80, 62 S. Ct. 457, 469, 86 L. Ed. 680 (1942)). The appellate court "must affirm the convictions if a rational trier of fact could have found the defendants guilty beyond a reasonable doubt and the convictions are supported by substantial evidence." *Id.* This evidence "does not need to be inconsistent with every conclusion save that of guilt" in order to sustain the verdict. *United States v. Allard*, 240 F.2d 840, 841 (3d Cir. 1957) (citing *Holland v. United States*, 348 U.S. 121, 75 S. Ct. 127, 99 L. Ed. 150 (1954), *rehearing denied*, 348 U.S. 932, 75 S. Ct. 334, 99 L. Ed. 731 (1955)). An appellant who seeks to overturn a conviction on insufficiency of the evidence grounds bears "a very heavy burden." *United States v. Losada*, 674 F.2d 167, 173 (2d Cir. 1982).

51 V.I. at 145. In *Latalladi* this Court also held that challenges under the Sixth Amendment's Confrontation Clause are subject to plenary review. *Id.* at 141.

## B. The Evidence Was Sufficient to Sustain Francis's Conviction for Violating 19 V.I.C. § 1563(5), But Not His Conviction for Violating 19 V.I.R.R. § 1560-2(j)

Francis, as his primary issue on appeal, contends that the People failed to introduce evidence sufficient to support both of his convictions. For the reasons that follow, we hold that the People introduced sufficient evidence to sustain Francis's conviction for violating 19 V.I.C. § 1563(5), but reverse Francis's conviction for violating 19 V.I.R.R. § 1560-2(j) because the Waste Management Authority lacked authority to promulgate a regulation inconsistent with statutory law.

### 1. The People Introduced Sufficient Evidence to Prove Francis Violated 19 V.I.C. § 1563(5)

Section 1563 of title 19 of the Virgin Islands Code provides, in pertinent part, that "[n]o person shall . . . cause, suffer or permit the accumulation, on premises under his management or control as owner, lessee, contractor or otherwise, of waste which because of its character or condition may invite the breeding or collection of flies, mosquitoes or rodents, or which may in any other manner prejudice the public health." 19 V.I.C. § 1563(5). " 'Waste; when unqualified, means solid waste and/or hazardous waste,' 19 V.I.C. § 1552(pp), with "sold waste" meaning "any trash, rubbish (combustible or noncombustible), garbage, refuse, offal, filth, bottles, glass, crockery, cans, cartons, scrap metal, *junked vehicles,* appliances or hardware, brush, waste soil, rock, concrete products, and construction materials, animal carcasses, sludge from a waste treatment plant or air pollution control facility, or any unsanitary or offensive material or discarded matter, *or parts or portions thereof . . . .*" 19 V.I.C. § 1552(hh) (emphases added).

At trial, Richardson and Proctor both testified that they observed car parts scattered all throughout Francis's property, (J.A. at 19, 38.) Moreover, Francis testified that he owned 394-4 Anna's Retreat with his wife, (J.A. at 44), with both Richardson and Proctor testifying that Francis told them that the property belonged to him during the course of their investigation. (J.A. at 20, 37-38.) However, the evidence that the conditions of Francis's property invited the breeding of mosquitoes is considerably weaker. Significantly, the only evidence relating to this element of the offense is Richardson's testimony that the car parts — as

well as the vehicles that were missing doors and windshields — were conducive to collecting water and breeding mosquitoes. (J.A. at 35.) Notably, Richardson did not explain why he believed the parts and vehicles could collect water and breed mosquitoes.

■ Nevertheless, the evidence against Francis, while not overwhelming, is sufficient to prove his guilt beyond a reasonable doubt. Although Richardson's testimony on the issue of mosquito breeding was fleeting, Francis never cross-examined Richardson on this issue and made no attempt to dispute that aspect of Richardson's testimony at trial. Therefore, because Francis never challenged Richardson's "experience, training or education" to testify on that issue, 5 V.I.C. § 833, we find that the evidence introduced at trial, if credited, established all elements of a section 1563(5) violation, and was thus sufficient to prove Francis guilty beyond a reasonable doubt.

## 2. The People Did Not Introduce Sufficient Evidence to Prove Francis Violated 19 V.I.R.R. § 1560-2(j)

In his appellate brief, Francis argues that the evidence introduced at trial is not sufficient to prove that he violated 19 V.I.R.R. § 1560-2(j) — which provides, in pertinent part, that "[n]o junked motor vehicle shall be permitted on or alongside any street or road or on private property in plain view from a street or road — because that regulation is not consistent with chapter 56 of title 19, which only criminalizes junked vehicles when they have been placed on private property without the consent of the property's owner. We agree.

■ Section 1562 of chapter 56 of title 19 provides that "any person violating any provision of this chapter, *or of any rules and regulations issued pursuant thereto*, shall be guilty of a misdemeanor . . . ." 19 V.I.C. § 1562(a) (emphasis added). Pursuant to section 1560, "[t]he Waste Management Authority shall promulgate such rules and regulations in accordance with the provisions of Title 3, Chapter 35 of this Code, as are necessary for the purpose of implementing and enforcing the provisions of this chapter." Chapter 35 of title 3 further requires that "[e]ach regulation adopted, to be effective, must be within the scope of authority conferred and in accordance with standards prescribed by other provisions of law." 3 V.I.C. § 912. In addition, to these statutory provisions, it is well established that administrative agencies may not enact regulations that contradict the plain language of their enabling

319

statutes. *See Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 507 (3d Cir. 2009) (explaining that administrative agency, while having "the authority to issue regulations to carry out the duties that [the legislature] has assigned to it . . . has no authority to change the Act" through a regulation) (quoting *Dormeyer v. Comerica Bank*, 223 F.3d 579, 582 (7th Cir. 2000)); *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 797 (11th Cir. 2000) ("[T]he Department of Labor in this regulation has attempted to pry apart the clear words of the act in order to create a gap into which it can wedge its policy preferences. . . . [W]hen an administrative agency seeks to improve legislation by altering the basic coverage provisions that Congress has written into law, it has gone too far. The rule of law . . . require[s] that such administrative hubris be reigned in, and that the task of improving the basic provisions of statutes be left to the same body that wrote them in the first place.").

As Francis correctly notes in his brief, chapter 56 of title 19 does not define the term "junked vehicle," but does include a definition for "abandoned or junked automobile or other motor vehicle," which, as used in chapter 56, "means a motor vehicle that is inoperable or over eight years old and is left unattended on public property for more than forty-eight hours, or a motor vehicle that has remained illegally on public property for more than forty-eight hours, or a motor vehicle that has remained on private property without the consent of the owner or person in control of such property for more than forty-eight hours." 19 V.I.C. § 1552(a). Other than section 1552(a), this phrase only appears two other times in chapter 56. Pursuant to section 1563(6), one is prohibited from "plac[ing] or permit[ting] to remain any abandoned or junked automobile or other motor vehicle or boat, the body or wreckage or parts thereof, on any property, shoreline or submerged land without the consent of the owner thereof." 19 V.I.C. § 1563(6). Similarly, section 1559 provides that "[a]ny abandoned or junked automobile or other motor vehicle, the body, or wreckage or part thereof placed on a public place or on any private property in violation of paragraph (6) of section 1563 of this title may be removed from such place or property in accordance with the provisions of chapter 49 of Title 20 of this Code." The litter ticket issued to Francis, however, provided that Francis violated 19 V.I.R.R. § 1560-2(j) by "permit[ing] junked vehicles to remain on his property in plain view from street." (J.A. at 11.)

■■ We find that 19 V.I.R.R. § 1560-2(j) is inconsistent with chapter 56 as applied to the instant prosecution. The definition of "abandoned or junked automobile or other motor vehicle" codified in section 1552(a), combined with the fact that section 1563(6) only criminalizes placing abandoned or junked vehicles "on any property . . . without the consent of the owner," clearly demonstrates that the Legislature did not intend to criminalize — without more — keeping a junked vehicle on one's own property.[1] Accordingly, because the uncontroverted evidence at trial established that Francis owned the property where the automobiles were located, and section 1560 of title 19 and section 912 of title 3 both prohibit the Waste Management Authority from promulgating regulations that contradict the statutory provisions found in chapter 56 of title 19, we reverse Francis's conviction for violating 19 V.I.R.R. § 1560-2(j).

### C. The Superior Court's Confrontation Clause Violation Constitutes Harmless Error

Francis further argues that he is entitled to a new trial on all counts because the Superior Court violated his rights under the Confrontation Clause of the Sixth Amendment of the United States Constitution.[2] Specifically, Francis contends that the Superior Court prevented him from asking Richardson questions about a possible common love interest between Richardson and himself, which, according to Francis, would have demonstrated that Richardson possessed a bias against Francis or had an ulterior motive for issuing the citations.

■ "The plain text of the Sixth Amendment's Confrontation Clause provides that, in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." *Blyden v. People*, 53 V.I. 637, 652-653 (V.I. 2010) (quoting *Crawford v. Washington*, 541 U.S. 36, 42, 124 S. Ct. 1354, 158 L. Ed.2d 177 (2004))

---

[1] However, as noted above, the presence of a junked vehicle on private property with the consent of the owner may violate other statutory provisions, such as the prohibition on conditions that invite the breeding of mosquitoes or injury to public health. *See* 19 V.I.C. § 1563(5).

[2] The Sixth Amendment is applicable to the Virgin Islands pursuant to section 3 of the Revised Organic Act. *See* The Revised Organic Act of 1954, § 3, 48 U.S.C. § 1561, *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 86 (1995) (preceding V.I. CODE ANN. tit. 1) ("In all criminal prosecutions the accused shall enjoy the right . . . to be confronted with the witnesses against him").

(internal quotation marks omitted). It is well established that a criminal defendant's right to confront adverse witnesses encompasses the right to question those witnesses as to their biases. *See Davis v. Alaska*, 415 U.S. 308, 316, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974). However, because the Confrontation Clause only guarantees an opportunity for cross-examination, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination . . . ." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 1435, 89 L. Ed.2d 674 (1986). For instance, courts have consistently held that criminal defendants who wish to impeach prosecutorial witnesses for bias must seek to elicit relevant information through their questioning. *See, e.g., United States v. Maxwell*, 579 F.3d 1282, 1296 (11th Cir. 2009) (citing *United States v. Diaz*, 26 F.3d 1533, 1540 (11th Cir. 1994)); *Wilson v. Parker*, 515 F.3d 682, 702 (6th Cir. 2008).

██ Here, the record clearly indicates that the Superior Court did not merely limit Francis's cross-examination of Richardson, but completely foreclosed any questioning with respect to bias and the potential mutual love interest.[3] Accordingly, because prohibiting a defendant from asking any questions pertaining to a prosecutorial witness's bias violates the

---

[3] The part of Francis's cross examination of Richardson at issue is as follows:

> FRANCIS: Before you gave me a citation here, you said to me, "You have a woman on my road." You recall saying that?
> RICHARDSON: Say What?
> FRANCIS: You say you have a woman on my road?
> THE COURT: The objection is sustained. The question is irrelevant. Sir, ask a —
> FRANCIS: No, because I want to know —
> THE COURT: Sir, ask a question. Whether he has a woman on our road is totally irrelevant to these charges.
> FRANCIS: Okay. Were you upset when I said I have a woman on that road too and she might be the same woman that I have?
> RICHARDSON: No. That have nothing to do with it.
> FRANCIS: But you recall me saying it, though?
> PEOPLE'S COUNSEL: Objection. Irrelevant.
> THE COURT: Sir, this isn't melee court, okay. Just ask relevant questions pertaining to your guilt or innocence.
> FRANCIS: Could I say something to the Court?
> THE COURT: Sir, just ask the question.

(J.A. at 31-32.)

Confrontation Clause, we hold that the Superior Court erred when it disallowed Francis from asking these questions. *Compare Van Arsdall*, 475 U.S. at 679 (holding that a trial court violated Confrontation Clause when it prohibited all inquiry by defendant into prosecution witness's possible bias) *with Maxwell*, 579 F.3d at 1296 (holding no Confrontation Clause violation when court barred questions directed to prosecution's witnesses because defendant's cross-examination of employees "exposed facts that were more than sufficient to allow the jury to draw inferences about their reliability and to allow [the defendant] to fully argue that they were indeed biased.").

■ However, while the Superior Court erred when it disallowed Francis's questioning of Richardson on the potential bias issue, reversal is not required if such error was nevertheless harmless. *See Blyden*, 53 V.I. at 658. A "[h]armless error is '[a]ny error, defect, irregularity, or variance that does not affect substantial rights,' and thus 'must be disregarded.' " *Phillips v. People*, 51 V.I. 258, 276, n.15 (V.I. 2009) (quoting FED. R. CRIM. P. 52(a)). The United States Supreme Court has instructed that, in the context of determining whether a "constitutionally improper denial of a defendant's opportunity to impeach a witness for bias" is harmless, an appellate court must "assum[e] that the damaging potential of the cross-examination were fully realized" and then consider "a host of factors," including "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Van Arsdall*, 475 U.S. at 684, 106 S. Ct. 1438.

■ We find that all of the *Van Arsdall* factors strongly support a finding that the Superior Court's decision, while erroneous, was nevertheless harmless beyond a reasonable doubt. Even if Francis's questioning, if it had it been allowed to continue, would have established that Richardson possessed a strong bias against him, Richardson's testimony as to the conditions on Francis's property was cumulative of Proctor's testimony on that same issue. Moreover, at trial the People admitted into evidence two photographs of the vehicles, auto parts, and debris on Francis's property that further corroborated Richardson's testimony. (J.A. at 25.) In addition, during his testimony Francis did not dispute the condition of the property at the time the citations were issued or contest Richardson's

claim that the cars and parts were conductive to breeding mosquitoes, but simply argued that he was not the sole owner of the property, that he had never been notified that there was a problem prior to issuance of the citations, and that, as of the date of trial, there were no junked vehicles remaining on the property. (J.A. at 45-46.) Given these circumstances, we find the Superior Court's error harmless and that it does not warrant a new trial.

## D. Francis's Due Process Rights Were Not Violated

Finally, Francis requests a new trial on the basis that his due process rights were violated because (1) the complaining witness was never identified; and (2) the litter citations contained procedural defects. For the reasons that follow, we hold that neither ground warrants reversal.

 ██ The Due Process Clause of the Fourteenth Amendment bars deprivation of life, liberty, or property without notice and an opportunity to be heard. *See Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532, 542, 105 S. Ct. 1487, 1493, 84 L. Ed. 2d 494 (1985) (citation omitted). However, in his appellate brief, Francis does not advance any argument — legal or otherwise — explaining how his lack of knowledge of the complaining witness's identity violated his due process rights, but only states that "whether or not defendant was denied due process of law as to both offenses in that . . . the complaining witness was unidentified" is an issue on appeal. (Appellant's Br. at 3, 14.) Therefore, because appellate courts can "only review a claimed error that . . . is supported by argument and citations to legal authority," *Bernhardt v. Bernhardt*, 51 V.I. 341, 345 (V.I. 2009) (quoting *Vern Sims Ford, Inc. v. Hagel*, 42 Wn. App. 675, 713 P.2d 736, 742 (1986)), and this Court can discern no error from its independent review of the record, we are unable to hold that Francis's due process rights were violated on this basis.

 Francis does, however, support his claim that the citations issued by Richardson were procedurally defect with citations to legal authority. Specifically, Francis contends that the language of each litter ticket[4]

---

[4] Each litter ticket contains the following language:

In order to secure his release, an arrested person must give his written promise to appear in Court as required by the ticket by signing his name in the appropriate place hereon. Upon refusal to sign such written promise or to provide his name or address, the arrested person may be held in custody by the arresting officer.

(J.A. at 11.)

differs from the language in 19 V.I.C. § 1561(e),[5] in that the requirements set forth in section 1561(e) are significantly more detailed. However, section 1561(e), by its own terms, applies only when an individual "is apprehended for any violation of this chapter *committed in a public place*." (emphasis added). Accordingly, since the record clearly establishes that the charged violations had occurred on Francis's property, any difference in language between the litter ticket and section 1561(e) is irrelevant. Moreover, even if section 1561(e) applies to the instant matter, any difference between the statutory language and the language on the litter ticket constitutes — at worst — a harmless error, since Francis appeared at the December 5, 2007 hearing as instructed by the litter ticket and had sufficient notice of the charges against him to cross-examine witnesses and testify on his own behalf. Consequently, this Court finds that Francis's due process rights were not violated.

## III. CONCLUSION

The evidence in this case, when viewed in the light most favorable to the People, was sufficient for a rational trier of fact to conclude, beyond a reasonable doubt, that Francis violated 19 V.I.C. § 1563(5) by permitting a condition to persist on his property that may invite the breeding of mosquitoes. However, because the Waste Management Authority was not permitted to establish a regulation that contradicts or

---

[5] This statute reads, in its entirety:

Whenever any person is apprehended for any violation of this chapter committed in a public place the apprehending peace officer may serve upon him a citation and levy of fine, which citation and notice shall be in a form approved by the Superior Court and shall be known as a "litter ticket." A litter ticket shall include spaces for the name and address of the person cited, the offense charged and the time and place of its commis-sion. Such spaces shall be filled with the appropriate information by the apprehending officer. The ticket shall also indicate the fine to be paid and a time limit for payment. If the fine is not paid within the stated time, a summons to appear in court shall be issued and, if the violation was committed from a motor vehicle, boat or aircraft, a lien may be placed against same until the fine is paid. Upon the cited person's refusing to furnish his name and address, he may be taken into custody by the apprehending officer; provided, that a peace officer shall not serve or issue a litter ticket for any offense or violation except when the same is committed in his presence. For the purposes of this chapter the "Uniform Traffic Ticket" in the form prescribed by the District Court may be used by members of the police force as "litter tickets."

19 V.I.C. § 1561(e).

exceeds the authority of the statutory provisions found in chapter 56 of title 19, we reverse Francis's conviction for violating 19 V.I.R.R. § 1560-2(j). Finally, we hold that Francis is not entitled to a new trial because the Superior Court's error in disallowing his questioning of Richardson was harmless and he has failed to demonstrate that his due process rights were violated. Accordingly, this Court reverses the Superior Court's December 7, 2007 Judgment as to Francis's conviction for violating 19 V.I.R.R. § 1560-2(j), but affirms it on all other grounds.