**KAREEM JAMAL BROWN, Appellant/Defendant**

**v.**

**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Crim. No. 2008-0073

Supreme Court of the Virgin Islands

October 27, 2010

498

GAYLIN VOGEL, ESQ., ALAN D. SMITH, ESQ., Hodge & Francois, St. Thomas, USVI, *Attorneys for Appellant.*

MATTHEW PHELAN, ESQ., AAG, Dept. of Justice, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and CARROLL III, *Designated Justice.*[1]

## OPINION OF THE COURT

(October 27, 2010)

HODGE, C.J. Appellant, Kareem Jamal Brown ("Brown"), appeals from the Superior Court's September 9, 2008 Judgment and Commitment, which sentenced him to life imprisonment without parole for his convictions for first degree murder, among other crimes. For the reasons which follow, we will reverse the Superior Court's Judgment and Commitment and remand this matter to the trial court for a new trial on all counts.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This appeal arises from the fatal stabbing of Jahleel Halliday ("Halliday"), which occurred on September 12, 2005 during a fight at the Foot Locker store located in Lockhart Gardens on St. Thomas. During the fight, Halliday suffered three stab wounds including one which pierced his heart and led to his death. In a Third Amended Information, the People of the Virgin Islands ("the People") charged Brown with first degree murder pursuant to V.I. CODE ANN. tit. 14 §§ 922(a)(1)[2]

---

[1] Associate Justice Ive Arlington Swan is recused from this matter. The Honorable James S. Carroll III, a sitting Judge of the Superior Court, has been designated in his place pursuant to 4 V.I.C. § 24(a).

[2] "All murder which . . . is perpetrated by means of poison, lying in wait, torture, detonation of a bomb or by any other kind of willful, deliberate and premeditated killing . . . is murder in the first degree." 14 V.I.C. § 922(a)(1).

and 11(a),[3] possession of a dangerous weapon during the crime of violence of first degree murder pursuant to 14 V.I.C. § 2251(a)(2)(B), assault in the first degree pursuant to 14 V.I.C. §§ 295(1) and 11(a), and possession of a dangerous weapon during the crime of violence of assault in the first degree pursuant to 14 V.I.C. § 2251(a)(2)(B). The essential facts established during the March 25-28, 2008 trial were as follows.

During lunch time on September 12, 2005, a fight broke out at Charlotte Amalie High School between students from the Savan neighborhood and students from the Oswald Harris Court neighborhood. Brown, a seventeen-year old senior who lived in Oswald Harris Court, participated in the fight, as did Robertson Timothy ("Timothy"), a minor student from Savan. After campus security ended the fight, Timothy called his friend, Halliday, to pick him up from school. Halliday, who was not a student at the high school, picked up Timothy and another student, Viggo Niles, Jr. ("Niles"), in his employer's delivery van, and the two students accompanied Halliday while he made deliveries for his employer. Thereafter, they drove to the Foot Locker store, and Timothy and Niles waited outside the store while Halliday shopped inside the store.

According to Timothy's testimony, Brown and Keelo Jacobs ("Jacobs"), a graduate of Charlotte Amalie High School, were among a group of six to eight young men who approached Timothy and Niles outside the Foot Locker store with various weapons including brass knuckles and a knife, which was being carried by Brown. Timothy testified that he and Niles ran into the store as someone from the group threw a plastic bottle containing liquid at them and then proceeded to attack Halliday's van and slash its tires. He further testified that Jacobs and Brown pursued them into the store and that Jacobs asked Brown whether Halliday was "one of them" before taking the knife Brown was holding and stabbing Halliday. According to Timothy, after Halliday fell to the ground, Brown and Jacobs were cursing and throwing shoes around the store while Timothy attempted to stop Halliday's bleeding. The police eventually arrived at the scene and Halliday was taken to the hospital in an ambulance, where he later perished. Timothy subsequently identified Brown as the attacker from a photo array.

---

[3] "Whoever commits a crime or offense or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." 14 V.I.C. § 11(a).

Jacobs, who had entered into a plea agreement[4] with the People prior to Brown's trial and was awaiting sentencing, testified against Brown and gave an account of the altercation which differed from Timothy's account. According to Jacobs, he and Brown were at the nearby McDonald's restaurant, when Halliday's van pulled in front of the nearby Foot Locker store. Jacobs testified that Brown stated, "[t]hose the guys that jump me in school," before running towards the Foot Locker. Jacobs further testified that he followed Brown across the street to the Foot Locker and that Brown went inside the store and started to hit Halliday while Jacobs waited outside. Jacobs testified that he entered the store and began to kick and hit Halliday after he saw that Halliday was winning the fight with Brown. According to Jacobs, Brown suddenly stabbed Halliday three times with the knife he was carrying.

During his case-in-chief, Brown called several witnesses who testified that he was a quiet, peaceful, law-abiding person. On rebuttal, the People called two witnesses who testified concerning specific incidents in which Brown did not act as a peaceful, law-abiding person. Specifically, the People called Angel Barthlett ("Barthlett") who testified that when Brown was in elementary school he witnessed Brown and a female Assistant Principal engaged in a choking struggle. Additionally, the People called Elita Bradshaw ("Bradshaw") who testified that Brown used to bag groceries at the Pueblo grocery store where she was a store director and that Brown had once stolen a veggie burger and had slashed her vehicle's tires after she told him he could not work at the store anymore. Brown objected to the testimony of both rebuttal witnesses on grounds that the testimony impermissibly concerned specific instances of prior bad acts. The trial court overruled Brown's objection on grounds that Brown had called character witnesses to testify on his own behalf. After the close of all the evidence but prior to closing arguments, Brown made a motion to call a surrebuttal witness to rebut Bradshaw's testimony, but the trial court denied the motion.

On March 28, 2008, the jury returned its verdict finding Brown guilty of all four counts charged in the Third Amended Information. Following the jury's verdict, Brown orally renewed his motion for judgment of

---

[4] The record indicates that Jacobs pled guilty to the crime of voluntary manslaughter in exchange for the People's recommendation of a maximum sentence of seven and a half years of incarceration.

acquittal and orally moved for a new trial; and the trial court permitted the parties to file written memoranda for and against Brown's motions. On July 16, 2008, Brown filed his Amended Motion for Judgment of Acquittal or for New Trial or Evidentiary Hearing and a memorandum of law in support thereof, arguing that he was entitled to a judgment of acquittal because the People had failed to meet its burden of proving that he aided and abetted another in committing first degree murder. Brown also argued that he was entitled to a new trial either on grounds of newly-discovered evidence or on grounds that the trial court erred in admitting the People's rebuttal witnesses and denying his motion to call a surrebuttal witness. With respect to the newly-discovered evidence, Brown submitted an affidavit by Niles in which Niles averred that Brown was not present at the Foot Locker at the time of the fight and that Niles had never told the police that Brown was present. Brown also submitted an affidavit from his counsel declaring that his counsel had learned in October 2007—five months before Brown's trial—that Niles had contacted the People and given a tape-recorded statement indicating that Brown was not at the Foot Locker during the stabbing. The People provided Brown with a copy of the Niles tape in February 2008—a month before trial—but the voice on the tape was inaudible. Brown maintained in his motion for judgment of acquittal or new trial that he diligently attempted to interview Niles prior to trial but was unsuccessful in locating him and that Niles's affidavit was newly-discovered evidence that was material to his defense and would likely have resulted in his acquittal. With respect to the People's rebuttal witnesses, Brown argued that the trial court erroneously admitted testimony of specific instances of bad conduct to prove Brown's bad character.

The People filed an opposition to Brown's post-trial Amended Motion for Judgment of Acquittal or for a New Trial on August 18, 2008, arguing that the evidence was sufficient to prove the charges beyond a reasonable doubt and that Niles's statement was not newly-discovered evidence because Brown had the audio tape more than a month prior to trial. Additionally, the People argued that admission of the rebuttal witnesses' testimony concerning specific instances of bad character was not in error because Brown had placed his character at issue. Brown filed a reply on August 28, 2008. On the same day, a sentencing hearing was held, and the trial court issued its oral ruling on Brown's motion, stating:

I am persuaded that the jury did understand and interpret the evidence in this case properly, that they did understand and follow this Court's instructions, and that while this may not have been a perfect trial, I believe it was a fair one. And therefore, I will deny the Motion for New Trial and the Motion for Judgment of Acquittal. . . . I do not relish proceedings of this type, but I do not feel that I can substitute my judgment for that of the jury in this case. I have viewed the evidence in the light most favorable to the People as I am required to do on the Motion for Judgment of Acquittal, and have determined that a reasonable trier of fact could find that there was substantial evidence upon which to base a verdict of guilty, murder in the first degree.

I have as well done my best to evaluate the credibility of the witnesses in this case. And again, while this was not a perfect trial, I was not persuaded that the jury's verdict should be overturned.

(Hr'g Tr., 4-6, Aug. 28, 2008.) On September 9, 2008, a Judgment and Commitment was entered, sentencing Brown to life imprisonment without parole. The Judgment additionally provided that: "[t]he Court advised the parties of his review of all post-trial motions filed on behalf of the Defendants [sic] and responses thereto from the People and entered its Findings of Facts and Conclusions of Law on the record, which are incorporated herein by reference, and denied Defendant's Motion for Judgment of Acquittal or for New Trial." (J. & Commit. at 1.)

On September 2, 2008, Brown filed a timely notice of appeal.[5]

## II. DISCUSSION

### A. Jurisdiction and Standards of Review

The Superior Court had jurisdiction over this criminal matter pursuant to 4 V.IC. § 76(b), and this Court has jurisdiction over this appeal pursuant to 4 V.I.C. § 32(a).

The standard of review for this Court's examination of the Superior Court's application of law is plenary, while the Superior Court's findings

---

[5] "A notice of appeal filed after the announcement of a decision, sentence, or order — but before entry of the judgment or order — is treated as filed on the date of and after the entry of judgment." V.I.S.CT.R. 5(b)(1).

of fact are reviewed for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). In *Latalladi v. People*, 51 V.I. 137, 145 (V.I. 2009), we refined the standard by which this Court reviews a challenge to the sufficiency of the evidence leading to conviction:

> When appellants challenge the sufficiency of the evidence presented at trial, it is well established that, in a review following conviction, all issues of credibility within the province of the jury must be viewed in the light most favorable to the government." *United States v. Gonzalez*, 918 F.2d 1129, 1132 (3d Cir. 1990) (citing *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942)). The appellate court "must affirm the convictions if a rational trier of fact could have found the defendants guilty beyond a reasonable doubt and the convictions are supported by substantial evidence." *Id.* This evidence "does not need to be inconsistent with every conclusion save that of guilt" in order to sustain the verdict. *United States v. Allard*, 240 F.2d 840, 841 (3d Cir. 1957) (citing *Holland v. United States*, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150, *rehearing denied* 348 U.S. 932, 75 S. Ct. 334, 99 L. Ed. 731 (1955)). An appellant who seeks to overturn a conviction on insufficiency of the evidence grounds bears "a very heavy burden." *United States v. Losada*, 674 F.2d 167, 173 (2d Cir. 1982).

Additionally, we review the trial court's denial of a motion for a new trial based upon newly-discovered evidence only for an abuse of discretion, unless the denial was based upon the application of a legal precept in which case our review is plenary. *Phillips v. People*, 51 V.I. 258, 280 (V.I. 2009). Similarly, our review of the trial court's admission of evidence is solely for abuse of discretion. *Ritter v. People*, 51 V.I. 354, 359 (V.I. 2009).

### B. The Trial Court Did Not Err in Denying the Motion for Judgment of Acquittal

As his first issue on appeal, Brown argues that the trial court erred in denying his motion for judgment of acquittal, because the evidence was insufficient to prove beyond a reasonable doubt that he aided and abetted another in the commission of first degree murder. In particular, Brown contends that the People failed to prove that he aided and abetted Jacobs in the stabbing and that Jacobs and Brown acted willfully and with deliberation and premeditation. In contrast, the People maintain that the

evidence was sufficient to find Brown guilty of aiding and abetting Jacobs in the commission of first degree murder.

■ The Third Amended Information charged Brown with first degree murder as a principal pursuant to 14 V.I.C. § 11(a), the aider and abettor statute, and not as the primary actor in the alleged homicide. Importantly, the trial judge instructed the jury that to find Brown guilty of first degree murder that it had to find as one of the elements that Brown aided and abetted another.[6] Thus, in accordance with the trial judge's instructions, the People had to prove beyond a reasonable doubt that Brown aided and abetted another in unlawfully killing Halliday, willfully, deliberately and with premeditation and malice aforethought.[7] "In order to establish the offense of aiding and abetting, the Government must prove [the following] elements: that the substantive crime has been committed and that the defendant knew of the crime and attempted to facilitate it." *United States v. Frorup*, 963 F.2d 41, 43, 27 V.I. 375 (3d Cir. 1992). "Additionally, we require proof that the defendant had the specific intent to facilitate the crime." *United States v. Mercado*, 610 F.3d 841, 846 (3d

---

[6] The trial court instructed the jury:

> In order to prove the offense of murder in the first degree as charged in Count One of the Third Amended Information, the People of the Virgin Islands must prove each of the following elements beyond a reasonable doubt: (1) On or about September 12, in St. Thomas, U.S. Virgin Islands; (2) Kareem Brown; (3) **aided and abetted another**; (4) in unlawfully killing Jahleel Halliday; (5) willfully, deliberately, and with premeditation; (6) with malice aforethought.

(Trial Tr. at 261; Supp. J.A. III at 921) (emphasis added).

[7] Also instructive is the following colloquy between the Court and counsel:

> THE COURT: I don't understand how that helps your argument at all. Either the Defendant aided and abetted Keelo Jacobs in stabbing Jahleel Halliday or, based on the evidence presented, he stabbed him himself or he didn't do either. None of the other — there is no testimony that anyone else directly participated in the death of Jahleel Halliday. ATTORNEY CARTY: Right. So then it cannot be the latter. It could only be one of the two former.
> THE COURT: Or not guilty. He either aided and abetted, he did it himself, or he didn't do it at all.
> ATTORNEY CARTY: Right.
> ATTORNEY SMITH: But, Your Honor, he is not charged with having done it himself.
> THE COURT: I understand that.
> ATTORNEY CARTY: I'm sorry.
> THE COURT: He's not charged with having done it himself.

(Supp. J.A. at 827-828.)

Cir. 2010). Therefore, in this case, the People were required to prove that someone else committed the first degree murder of Halliday, that Brown knew of and attempted to facilitate the first degree murder, and that Brown had the specific intent to facilitate the crime.

### 1. There Was Sufficient Evidence of Jacobs' Intent

At trial, the People presented Jacobs' testimony that it was Brown who stabbed Halliday. The People also presented Timothy's testimony that it was Jacobs, and not Brown, who killed Halliday.[8] Thus, we must first determine whether there was sufficient evidence, when viewed in the light most favorable to the People, from which the jury could conclude that Jacobs, the principal who was aided and abetted, had committed the crime of first degree murder. *See Latalladi*, 51 V.I. at 145.

■■ Brown maintains that the People failed to prove that Jacobs had the requisite intent to commit first degree murder, because the testimony illustrates that Jacobs entered the fight in the heat of the moment when Brown was losing the fight with Halliday and that Jacobs grabbed the knife quickly from Brown and stabbed Halliday immediately thereafter. However, premeditation is generally described as,

> the deliberate formation of and reflection upon the intent to take a human life, and involves the mental process of thinking beforehand, deliberation, reflection, weighing, or reasoning *for a period of time, however short*. Premeditation, however, may be established by circumstantial evidence, including: the nature of the weapon used, lack of provocation, the defendant's conduct before and after the killing, threats and declarations of the defendant before and during the occurrence, or the dealing of lethal blows after the deceased was felled and rendered helpless. Other relevant factors include ill will or previous difficulties between the parties, evidence that the killing was done in a brutal manner, the nature and number of the victim's wounds, the use of a deadly weapon upon an unarmed victim, the particular cruelty of the killing, declarations by the defendant of an intent to kill,

---

[8] On direct examination by Brown, Marisel Melendez ("Melendez"), who was in the Foot Locker at the time of the stabbing, testified that she heard someone requesting a knife during the fight but did not actually see the person or the stabbing. (Trial Tr., vol. IV, 46, Mar. 27, 2008).

evidence of procurement of a weapon, preparations before the killing for concealment of the crime, and calmness immediately after the killing. . . . The premeditation required for a first-degree murder conviction is not inferred from the use of a deadly weapon alone . . . .

40A Am. Jur. 2d *Homicide* § 448 (Feb. 2010) (emphasis added). Similarly, the Third Circuit Court of Appeals has aptly explained that:

[t]o premeditate a killing is to conceive the design or plan to kill. A deliberate killing is one which has been planned and reflected upon by the accused and is committed in a cool state of the blood, not in sudden passion engendered by just cause of provocation. *It is not required, however, that the accused shall have brooded over his plan to kill or entertained it for any considerable period of time. Although the mental processes involved must take place prior to the killing, a brief moment of thought may be sufficient to form a fixed, deliberate design to kill.*

*Gov't of the Virgin Islands v. Martinez,* 780 F.2d 302, 305 (3d Cir. 1985) (internal citations omitted) (emphasis added).

█ On direct examination by the People, Timothy testified that:

[Jacobs] came into the store and was like, he was cursing at the van. [Brown] was there. [Brown] was there like just cursing and making noise you know at us. And then I think [Jacobs] turn to the left and saw [Halliday] and he said, if that's one of them. And then he asked for . . . a knife. He grabbed the knife from [Brown] and he pursued [Halliday]. . . .

(Trial Tr. vol. II, 96, Mar. 25, 2008.) Moreover, Melendez, who was in the store at the time of the stabbing, testified that she heard someone requesting a knife during the fight. Additionally, the medical examiner testified that Halliday suffered one stab wound to his right arm and two stab wounds to his chest, including the fatal stab wound which penetrated his heart. Thus, the jury was presented with sufficient testimony from which it could conclude that Jacobs fatally stabbed Halliday. However, Brown argues that Timothy's testimony demonstrates that Jacobs did not premeditate or deliberate the stabbing but instead stabbed Halliday in the heat of the fight. Although Timothy testified that Jacobs asked for the knife in the midst of the

fist fight and proceeded to stab Halliday soon thereafter, Timothy also testified that Jacobs asked Brown whether Halliday was "one of them" before requesting and then taking the knife from Brown. Thus, while there was no express declaration by Jacobs that he intended to kill Halliday, Jacobs' question to Brown and his subsequent taking of the knife and his pursuit of Halliday serve as circumstantial evidence of "a brief moment of thought . . . sufficient to form a fixed, deliberate design to kill." *Martinez*, 780 F.2d at 305.

Accordingly, mindful that we must view the evidence in the light most favorable to the People, *see Latalladi*, 51 V.I. at 145, we conclude that there was sufficient evidence from which the jury could conclude that Jacobs had the requisite intent to commit first degree murder.

### 2. There was Sufficient Evidence that Brown Aided and Abetted Jacobs

■ Having concluded that there was sufficient evidence that Jacobs committed the substantive offense of first degree murder, we must now determine whether there was sufficient evidence that Brown knew of and attempted to facilitate the first degree murder. *See Frorup*, 963 F.2d at 43. " 'Liability as an aider and abettor requires proof that [Brown] associated himself with the venture, that he participated in it as something he wished to bring about, and that he sought by his words or action to make it succeed.' " *Nanton v. People*, 52 V.I. 466, 484 (V.I. 2009) (*quoting United States v. Xavier*, 2 F.3d 1281, 1288, 29 V.I. 279 (3d Cir. 1993)). The People "can show the requisite intent with evidence [Brown] encouraged or helped the perpetrator." *Id.* (internal quotations omitted).

Brown contends that the evidence was insufficient to prove that he encouraged or helped Jacobs to stab Halliday, because Timothy testified that Jacobs "grabbed" the knife from Brown before stabbing Halliday. The People counter that the evidence was sufficient to show that Brown facilitated the crime because the testimony shows that Brown openly carried a knife, fought with Halliday, and provided Jacobs with a knife when he asked for it.

Significantly, the testimonies of Timothy and Melendez establish that Brown and Jacobs were fighting with Halliday when Jacobs requested a

knife and Brown "passed" it to him.[9] Additionally, Timothy testified that while he was trying to stop Halliday's bleeding, Brown and Jacobs continued cursing and throwing shoes at him and Halliday. We recognize, as argued by Brown, that Brown did not attempt to use his knife against Halliday despite the fact that he was losing the fist fight. Nevertheless, Brown's "passing" of the knife to Jacobs when he requested it, after inquiring whether Halliday was "one of them," is substantial evidence that Brown sought to facilitate Jacobs' stabbing of Halliday.

■ Importantly, it is not enough that the People prove that Brown sought to facilitate the stabbing of Halliday. In order to prove aiding and abetting of first degree murder, there must also be sufficient evidence of Brown's own intent, specifically that Brown knew Jacobs intended to kill Halliday with the knife or that Brown gave the knife to Jacobs with the intent that Jacobs kill Halliday. *See, e.g., Sanders/Miller v. Logan*, 710 F.2d 645, 647 (10th Cir. 1983) (holding that the defendant must herself possess a premeditated design to effect death or must have known of the other person's intent to kill the victim); *People v. Robinson*, 475 Mich. 1, 715 N.W.2d 44, 48 (2006) ("We reaffirm that evidence of defendant's specific intent to commit a crime or knowledge of the accomplice's intent constitutes sufficient mens rea to convict under our aiding and abetting statute."); *People v. McCoy*, 25 Cal. 4th 1111, 108 Cal. Rptr. 2d 188, 24 P.3d 1210, 1218 (2001) ("[T]he aider and abettor must know and share the murderous intent of the actual perpetrator."); *State v. Tangie*, 616 N.W.2d 564, 574 (Iowa 2000) ("When, as here, intent is an element of the crime charged, a person may be convicted on a theory of aiding and abetting if she participates with either the requisite intent, or with knowledge the principal possesses the required intent."); *State v. Brunzo*, 248 Neb. 176, 532 N.W.2d 296, 298 (1995) ("[A]n alleged aider and abettor can be held criminally liable as a principal . . . if it is shown that the aider and abettor knew that the perpetrator . . . possessed the required intent or that the aider and abettor himself or herself possessed the required intent."); *Wright v. State*, 402 So.2d 493, 499 (Fla. Ct. App.

---

[9] Although Timothy initially testified on direct that Jacobs "grabbed" the knife from Brown, he clarified on re-direct examination: "the knife was passed to [Jacobs]. . . . [Brown] passed it to him so [Jacobs] took it with speed. So I just said grab. But the knife was passed to [Jacobs]." (Trial Tr., vol. II, 161-62.)

1981) ("[W]e find the rule in Florida to be that aiders and abettors may be convicted either upon proof of their own state of mind or upon proof that they knew that the person aided had the requisite state of mind . . . .").

■ After carefully reviewing the trial transcript and viewing the evidence in the light most favorable to the People, we conclude that there was sufficient evidence of Brown's intent. As explained above, the testimony at trial established that Jacobs entered the fight at the Foot Locker because Halliday was winning the fight against Brown. Thereafter, Jacobs asked Brown whether Halliday was one of the guys Brown had fought with earlier that day and then proceeded to request a knife from Brown. Instead of attempting to dispel Jacob's belief that Halliday was involved in the fight at school and then refusing to provide him with the knife, Brown "passed" Jacobs the knife, which Jacobs used to stab Halliday multiple times in the chest. The jury could very well have considered from this testimony that Brown must have known Jacobs intended to stab Halliday. Additionally, the jury could have found it significant that Brown did not attempt to aid Timothy in stopping Halliday's bleeding after Jacobs stabbed him but, instead, joined Jacobs in cursing and throwing shoes at Halliday and Timothy, who was attempting to save Halliday's life. From this evidence, the jury could have found that Brown knew of Jacob's intent to kill, rather than merely stab, Halliday and that Brown's post-stabbing conduct demonstrated his approval of the stabbing and that he sought to aid Jacobs in killing Halliday. While the evidence was not overwhelming, we simply cannot conclude that no rational trier of fact could have found that Brown had the requisite intent to aid and abet Jacobs in the commission of first degree murder. *See generally United States v. Alper*, 449 F.2d 1223, 1227 (3d Cir. 1971) ("The evidence against him, though not as overwhelming as that against Alper, who played the leading role in this drama . . . , was clearly sufficient to withstand a motion for a judgment of acquittal and to sustain the jury's verdict against Greenberg.").

Having concluded that the People sufficiently proved both that the substantive offense of first degree murder was committed and that Brown aided and abetted in the commission of the offense, we hold that the trial court did not err in denying Brown's motion for judgment of acquittal.

## C. The Trial Court Abused Its Discretion by Admitting the Rebuttal Witnesses' Testimony of Specific Instances Tending to Prove Brown's Bad Character

As his second and third issues on appeal, Brown argues that the trial court erred in denying his motion for a new trial which was based upon both newly-discovered evidence and the trial court's admission of the People's rebuttal witness testimonies. Before we consider the merits of Brown's arguments concerning his entitlement to a new trial, we address his alternate contention that a limited remand to the trial court is appropriate because the court summarily denied his motion for a new trial without providing any reasons therefor.

As noted above, the Judgment and Commitment states that the trial judge advised the parties at the sentencing hearing that he had reviewed Brown's post-trial motions, made his findings of fact and conclusions of law on the record, and denied Brown's Motion for Judgment of Acquittal or for New Trial. From our review of the sentencing hearing transcript, however, it appears that the trial judge failed to address the portion of Brown's motion which requested a new trial. Although the judge stated that he "will deny the Motion for New Trial and the Motion for Judgment of Acquittal," the colloquy following his ruling focuses solely upon the sufficiency of the evidence and the standards governing judgments of acquittal. (Hr'g Tr., 4-6, Aug. 28, 2008.) Notably, the court's ruling does not refer to the newly-discovered evidence or the specific instances of bad character testimony. Thus, contrary to Brown's contention, it is not clear that the trial court in fact ruled upon and denied his request for a new trial.

"The denial of the motion for a new trial will be upheld so long as the trial court did not abuse its discretion or fail to exercise it." *United States v. Friedland*, 660 F.2d 919, 931 (3d Cir. 1981) (emphasis added); *see also United States v. Rush*, 749 F.2d 1369, 1372 (9th Cir. 1984). Here, it appears that the trial court failed to exercise its discretion with respect to Brown's request for a new trial. Nevertheless, a limited remand for the trial court to clarify its ruling with respect to the motion for a new trial is not necessary in this instance because, as discussed below, the record discloses that Brown is entitled to a new trial based upon the trial court's erroneous admission of the People's rebuttal witness testimony. *See, e.g., Seattle Box Co., Inc. v. Industr. Crating and Packing Inc.*, 756 F.2d 1574, 1578 (Fed. Cir. 1985) ("[T]he 'normal practice' of remanding a case to the trial court for reconsideration 'is not inflexible and may be departed from

in appropriate circumstances, particularly where, as here, the record leaves no question as to the decision that must result from a remand.' ").

We now address the merits of Brown's contention that he is entitled to a new trial because the trial court erred in admitting the testimony of Barthlett and Bradshaw-the People's rebuttal witnesses. During his case-in-chief, Brown called numerous witnesses, including his mother and brother, who testified that he was a quiet, peaceful, law-abiding person. The witnesses supported their opinion of Brown's good character by testifying that Brown never went to parties or congregated in parking lots with other boys and that he spent most of his time at home listening to music on his walkman. The People cross-examined each of Brown's character witnesses. After the close of Brown's evidence, the People called Barthlett and Bradshaw as rebuttal witnesses. Barthlett testified that when Brown was in elementary school he witnessed Brown and a female Assistant Principal engaged in a choking struggle. Bradshaw testified that Brown used to bag groceries at the grocery store where she worked and that he had once stolen a veggie burger and, on another occasion, had slashed her vehicle's tires after she told him he could no longer work at the store. Despite Brown's objection that both testimonies constituted inadmissible specific instances of bad conduct, the trial court admitted the rebuttal testimony on grounds that Brown had called witnesses to testify to his good character.

The applicable Virgin Islands' rules of evidence[10] provide for the admission of character evidence under limited circumstances. Specific-

---

[10] Brown argues that Uniform Rules of Evidence 403, 404, and 405(a) prohibit the People from introducing specific instances of prior bad conduct. Although Brown is correct that the Uniform Rules of Evidence ("URE") are applicable to this matter, he incorrectly cites to the current version of the URE. As we have repeatedly stated, the Legislature specifically enacted 5 V.I.C. §§ 771-956, which encompass the 1953 version of the URE. *See, e.g., People v. Todmann*, 53 V.I. 431, 437-38 (V.I. 2010).

We additionally note that on March 26, 2010 the Legislature approved, and on April 7, 2010 the Governor signed into law, Act No. 7161, section 15 which repealed the local URE. However, since Brown's trial concluded before the URE were repealed, this Court applies on appeal the evidentiary rules that were in effect at the time that Brown was tried in the Superior Court. *See, e.g., Black v. M&W Gear Co.*, 269 F.3d 1220, 1228 n.3 (10th Cir. 2001) (declining to apply amended rules of evidence on appeal when prior rules had been in effect during trial); *State v. Meyers*, 153 Ore. App. 551, 958 P.2d 187, 191 (Or. Ct. App. 1998) (explaining that applying amended rules of evidence to appeals of trial court orders decided when prior rules were in effect constitutes "a moving of the proverbial goal posts after the contest is over" that "raises serious questions of due process.").

ally, 5 V.I.C. § 886 provides that "[w]hen a person's character or a trait of his character is in issue, it may be proved by testimony in the form of opinion, evidence of reputation, or evidence of specific instances of the person's conduct, subject, however, to the limitations of sections 887 and 888 of this title." In turn, 5 V.I.C. § 887 provides that:

> when a trait of a person's character is relevant as tending to prove his conduct on a specified occasion, such trait may be proved in the same manner as provided by section 886 of this title, except that (a) *evidence of specific instances of conduct other than evidence of conviction of a crime which tends to prove the trait to be bad shall be inadmissible*, and (b) in a criminal action evidence of a trait of an accused's character as tending to prove his guilt or innocence of the offense charged, (i) may not be excluded by the judge under section 885 of this title if offered by the accused to prove his innocence, and (ii) if offered by the prosecution to prove his guilt, may be admitted only after the accused has introduced evidence of his good character.

(Emphasis added).

▓▓▓ Importantly, the People did not introduce any evidence of prior convictions to prove Brown's trait of character to be bad, which is specifically permitted by section 887(a). Although Bradshaw testified that Brown slashed her tires, there was no indication on the record that Brown was ever charged with, much less convicted of, committing such an act. Moreover, the People did not offer any other evidence other than Bradshaw's testimony that it was indeed Brown who had slashed her tires. Nor was there evidence that Brown's alleged struggle with the elementary school Assistant Principal, as was testified to by Barthlett, resulted in a conviction. Therefore, the admission of the rebuttal testimonies violated 5 V.I.C. § 887(a) because the testimony clearly consisted of specific instances of conduct offered to prove a trait of Brown's character to be bad.

▓▓▓ ▓▓▓ We expressly reject the People's contention, and the trial court's conclusion, that the rebuttal testimony was permissible because Brown had called multiple witnesses to testify to his reputation as a peaceful, law abiding citizen. Section 887(b) states that "in a criminal action evidence of a trait of an accused's character as tending to prove his guilt or innocence of the offense charged, . . . if offered by the prosecution

to prove his guilt, may be admitted only after the accused has introduced evidence of his good character." However, it is clear that section 887 is a limitation on section 886, which generally permits the use of opinion, reputation, and specific instances evidence when a person's character is in issue. Indeed, the Commissioners' Comment to section 887 explicitly states that "[a]s contrasted to . . . [section 886] . . . [section 887] definitely requires rejection of evidence of specific behavior to prove a character trait except evidence of conviction of a crime." 5 V.I.C. § 887, comm'rs cmt. Thus, section 887(b)(ii) permits the People to introduce bad character evidence to prove the defendant's guilt after the defendant introduces good character evidence to prove his innocence *only if* the People's evidence is in the form of opinion or reputation evidence.[11] To hold otherwise, would render meaningless section 887(a)'s proscription of specific bad acts evidence other than evidence of a conviction. *See Gilbert v. People*, 52 V.I. 350, 356 (2009) ("A statute should not be construed and applied in such a way that would result in injustice or absurd consequences."); *In re Sherman*, 49 V.I. 452, 466 (V.I. 2008) (Swan, J. concurring) ("Exceptions in statutes are narrowly construed so as not to render other provisions of the same statute superfluous or unnecessary."). Accordingly, we hold that the trial court abused its discretion in admitting the People's rebuttal testimony because the specific instances of bad conduct testified to by the rebuttal witnesses did not constitute evidence of prior convictions.[12]

 However, our conclusion that the trial court erred in admitting the character evidence does not necessarily entitle Brown to a new trial. We must first determine whether the trial court's error prejudiced Brown, i.e. that the error was not harmless. *Ritter*, 51 V.I. at 368. "'[U]nless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction, reversal is not required.' " *Id.* at 369 (quoting *Schneble v. Florida*, 405 U.S. 427, 432, 92 S. Ct. 1056, 1060, 31 L. E. 2d

---

[11] Such an interpretation of 5 V.I.C. § 887 is consistent with the manner in which Kansas courts interpret their character evidence rules, which are verbatim identical to this jurisdiction's character evidence rules. *See, e.g., State v. Penn*, 41 Kan. App. 2d 251, 201 P.3d 752, 759-60 (2009).

[12] The People also argue that Brown invited any error when he introduced specific instances of good conduct. Even if we assume without deciding that Brown's character witnesses testified to specific instances of good conduct, 5 V.I.C. § 887(a) prohibits only evidence of specific instances of conduct "to prove the trait *to be bad.*" (Emphasis added.)

514

340 (1972)). An error in admitting evidence is not so prejudicial as to require a new trial when there is other overwhelming evidence of the defendant's guilt. *See, e.g., Harp v. Commonwealth*, 266 S.W.3d 813, 821 n.32 (Ky. 2008) ("Even if we accepted . . . that the letter should not have been admitted, its admission would have been a harmless error because the gist of the letter . . . was cumulative . . . . Furthermore, the evidence against Harp was overwhelming."); *Becknell v. State*, 720 S.W.2d 526, 529 (Tex. App. 1986) ("If there is overwhelming evidence of guilt, even constitutional error may be harmless."); *State v. Clark*, 296 N.W.2d 359, 368 (Minn. 1980) ("Admission of extrinsic evidence rebutting defendant's denial that he stole the Bronco was error. In considering whether admission of evidence of collateral criminal conduct was so prejudicial as to deprive defendant of a fair trial, we have stated that to deny relief we must hold that the guilt of defendant was conclusively proven. As stated previously, the evidence of defendant's guilt is overwhelming.").

▮▮▮ Although we have concluded herein that the evidence was sufficient for the jury to find Brown guilty of aiding and abetting first degree murder, we cannot conclude that the trial court's error in admitting the rebuttal testimony did not prejudice Brown's rights. As we stated above, the evidence of Brown's own intent, though sufficient to withstand a judgment of acquittal, was not overwhelming. Furthermore, our review of the transcript reveals that the People's closing argument unduly emphasized the improperly admitted testimony. As an example, the People argued the following in its closing:

> Remember the young lady at Pueblo who had to get security to stop this young man from coming there to the store. Is that [a] law abiding person, as all these witnesses came and testified to?
>
> In 6th grade getting in a fight with your principal . . . a struggling, choke-hold fight with your principal? Does that sound like a peaceful, law abiding person? Does that sound — and remember the witnesses who testified here — to, I've known him before he was born. I've known him since he was a glee in his father's eyes. That's why even going back to 6th grade you may say, oh, that a long time ago. But, you know, still water runs deep, Ladies and Gentlemen. Some people say you have to watch the quiet ones.
>
> But for somebody who doesn't go out and doesn't do this, that, and the other he seems to get engaged in other activities.

(*Id.* at 229-30.) Additionally, the People argued: "Ladies and Gentlemen, the flat tires. Remember the flat tires to the tires at the locker? And remember the flat tires to the young lady at Pueblo? That I would say is a coincidence or maybe more." (Trial Tr. vol. IV, 229.) It is evident that the People sought to induce the jury to find that, because Brown had allegedly slashed Bradshaw's vehicle tires, it was likely that he was at the Foot Locker at the time of the fight, during which Halliday's van tires were slashed.

Given the lack of overwhelming evidence as to Brown's intent, as well as the People's emphasis of the rebuttal testimony during its closing, we conclude that there is a reasonable possibility that the improper character evidence affected the fairness of Brown's trial. Without the rebuttal witnesses' testimony of specific instances of bad conduct, the jury could very well have credited the testimony of Brown's character witnesses as to his reputation for peacefulness and found Brown not guilty in light of the vastly diverse testimonies of Timothy and Jacobs. Accordingly, because the trial court's erroneous admission of the People's rebuttal testimony was not harmless, Brown is entitled to a new trial on all counts.[13]

## III. CONCLUSION

Because the evidence was sufficient for the jury to find Brown guilty of aiding and abetting first degree murder, we hold that the trial court did not err in denying Brown's motion for judgment of acquittal. However, we hold that the trial court abused its discretion by admitting the testimony of the People's rebuttal witnesses, because the applicable rules of evidence prohibit the People from introducing evidence of specific instances of bad conduct other than evidence of prior convictions. Furthermore, we hold that the trial court's error in admitting the rebuttal testimony was not harmless. Accordingly, we reverse the Superior Court's September 9, 2008 Judgment and Commitment and remand for the trial court to conduct a new trial on all counts.

---

[13] Because we conclude that Brown is entitled to a new trial based upon the erroneous admission of the People's rebuttal witness testimony, we need not address Brown's alternative ground for a new trial — namely that Niles' post-trial affidavit constituted newly-discovered evidence. Additionally, our holding herein makes it unnecessary to address Brown's contention that he is entitled to a new trial pursuant to the cumulative errors doctrine.