**KHAREEM HUGHES, Appellant/Defendant**
**v.**
**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Criminal No. 2012-0030
Supreme Court of the Virgin Islands
October 31, 2013

RICHARD H. HUNTER, ESQ., Hunter & Cole, St. Croix, USVI, *Attorney for Appellant*.

BERNARD M. VANSLUYTMAN, ESQ., Solicitor General, St. Thomas, USVI, *Attorney for Appellee*.[1]

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(October 31, 2013)

HODGE, *Chief Justice*. Khareem Hughes appeals the Superior Court's September 5, 2012 Amended Judgment and Commitment, which found

---

[1] Although the People's original counsel filed a brief on February 26, 2013, the People moved this Court on March 11, 2013, for permission to withdraw the brief because it was filed without being reviewed by the Solicitor General or the Attorney General. This Court, in a May 30, 2013 Order, granted that motion, but declined to allow the People to file a replacement brief.

him guilty of voluntary manslaughter, the lesser included offense of first-degree murder, and reckless endangerment. For the reasons that follow, we reverse his convictions.

## I. STATEMENT OF RELEVANT FACTS AND PROCEDURAL POSTURE

The People of the Virgin Islands charged Khareem Hughes[2] and his two codefendants, Joh Williams and Jalani Williams, with numerous offenses — including first-degree murder — stemming from an event that took place on the early morning of August 2, 2009, when a shooting erupted in the vicinity of a restaurant parking lot and a nearby gas station on St. Croix. Almonzo Williams, who was shot thirteen times, died shortly after being transported from the scene. Lester Roberts and Kamal Lewis also sustained gunshot wounds in the shooting incident, but both survived.

Shortly after the shooting, Officer Orlando Benitez observed an individual — later identified as Khareem — slowly driving away from the restaurant in what turned out to be his aunt Lynell Hughes's vehicle, and saw another man — whom he later identified as Jalani — jump into the vehicle through the passenger window, at which point the vehicle sped away. (App. 697-99.) Benitez pursued the vehicle, and a high-speed chase ensued, resulting in Khareem's car speeding through a police roadblock and colliding with a truck. Although Khareem and Jalani fled on foot following the collision, another officer, Jose Ramos, apprehended Khareem. (App. 704-06, 830.)

Arkiesa Hughes — also Khareem's aunt — was present with Lynell at the restaurant the night of the shooting. According to Detective Richard Matthews, both Arkiesa and Lynell voluntarily came to the police station the night of the shooting and gave statements of what they observed. (App. 293, 304.) Their statements identified Joh as the person who shot Almonzo. (App. 319, 359.)

Detective Matthews met a second time with Lynell on October 7, 2009, and then with Arkiesa on November 13, 2009. (App. 375.) According to Detective Matthews, Lynell stated that immediately before the shots were

---

[2] Because many of the individuals involved in this case possess the same last names, we refer to them by their first names to minimize confusion.

1017

fired, Khareem told her and Arkiesa to "move from around here." (App. 381.) Lynell also allegedly admitted to seeing Jalani "come from across the road and fire two shots while [Almonzo] was on the ground." (App. 382.) Arkiesa allegedly told Matthews that on August 2, 2009, she first saw Khareem across the street from where the shootings occurred with Joh and a couple other people. (App. 394.) Arkiesa went up to Khareem to ask him for something, and Khareem responded that she should go home. (App. 395.) Additionally, when asked who she saw with Joh and/or Jalani on August 2, 2009, before the shootings occurred, she responded with "my nephew, Khareem." (App. 383.)

Trial began on October 18, 2011, during which the People called Arkiesa and Lynell, as well as Benitez and Matthews, as prosecution witnesses; however, both Arkiesa and Lynell recanted their prior statements. Specifically, Arkiesa testified that she was in a verbal altercation with another woman when Khareem came over and told her to stop attempting to provoke a physical fight with her and go home. (App. 41.) Arkiesa also denied seeing Joh or anyone else shooting that night. (App. 68.) Lynell denied seeing Joh shoot anyone that night. (App. 177.) However, Lynell did testify that immediately before the shootings, Khareem told her and Arkiesa to "move from [the area]." (App. 197.) Furthermore, both Lynell and Arkiesa admitted to signing and initialing the statements given to Detective Matthews, but they denied being able to read and thus did not know the contents of the papers they signed. (App. 89, 155.)

Trial ended on November 4, 2011. The jury found Khareem guilty of the lesser included offense of voluntary manslaughter of Almonzo and reckless endangerment. On March 14, 2012, the Superior Court denied Khareem's December 5, 2011 renewed motion for judgment of acquittal, and from the bench sentenced Khareem to incarceration of ten years for the voluntary manslaughter and five years for the reckless endangerment conviction, both to run concurrently. Khareem filed a timely notice of appeal on March 28, 2012. (App. 1-3.)

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court. . . ."

V.I. CODE ANN. tit. 4, § 32(a). An order is considered to be "final" for purposes of this statute if it "ends the litigation on the merits, leaving nothing else for the court to do except execute the judgment." *Williams v. People*, 55 V.I. 721, 727 (V.I. 2011). In addition, it is well established that in a criminal case, a written judgment or order embodying the adjudication of guilt and imposing the sentence based on that adjudication is final and appealable under this statute. *Frett v. People*, 58 V.I. 492, 502 (V.I. 2013). Because the Superior Court's September 5, 2012 Amended Judgment and Commitment is a final judgment, this Court has jurisdiction over this appeal.

Ordinarily, the standard of review for this Court's examination of the Superior Court's application of law is plenary, while findings of fact are reviewed for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). When reviewing a challenge to the sufficiency of the evidence supporting a conviction, we view all issues of credibility in the light most favorable to the People. *Latalladi v. People*, 51 V.I. 137, 145 (V.I. 2009). If " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,' " we will affirm. *DeSilvia v. People*, 55 V.I. 859, 865 (V.I. 2011) (quoting *Mendoza v. People*, 55 V.I. 660, 667 (V.I. 2011)). The evidence offered in support of a conviction " 'need not be inconsistent with every conclusion save that of guilt, so long as it establishes a case from which a jury could find the defendant guilty beyond a reasonable doubt.' " *Mulley v. People*, 51 V.I. 404, 409 (V.I. 2009) (quoting *United States v. Carr*, 25 F.3d 1194, 1201 (3d Cir. 1996)). A defendant seeking to overturn his conviction on this basis bears " 'a very heavy burden.' " *Latalladi*, 51 V.I. at 145 (quoting *United States v. Losada*, 674 F.2d 167, 173 (2d Cir. 1982)).

## B. Sufficiency of the Evidence

■ Khareem argues that the evidence was insufficient to establish beyond a reasonable doubt that he aided and abetted his codefendants in the unlawful killing of Almonzo. Khareem was charged with his codefendants both as a primary actor and as an aider and abettor to the homicide. Under Virgin Islands law, a person charged as a primary actor can be convicted as an aider and abettor. *Todman v. People*, 59 V.I. 675, 683 (V.I. 2013) (quoting *United States v. Standefer*, 610 F.2d 1076, 1083-84 (3d Cir. 1979)). When determining whether a jury's verdict is supported by sufficient evidence, this Court may not usurp the role of the

jury by re-weighing the evidence and re-assessing the credibility of witnesses. *Smith v. People*, 51 V.I. 396, 401 (V.I. 2009).

■ The People failed to introduce any evidence that Khareem fired any shots or even possessed a firearm. Nevertheless, this Court may sustain Khareem's manslaughter conviction if the People presented sufficient evidence that he aided and abetted someone else in the commission of a murder. To obtain a conviction under an aiding and abetting theory, the People must prove (1) that the substantive crime has been committed, and (2) the defendant knew of the crime and attempted to facilitate it. *Brown v. People*, 54 V.I. 496, 505 (V.I. 2010). "Liability as an aider and abettor requires proof that the defendant associated himself with the venture, that he participated in it as something he wished to bring about, and that he sought by his words or action to make it succeed." *Nanton v. People*, 52 V.I. 466, 484 (V.I. 2009) (quoting *United States v. Xavier*, 2 F.3d 1281, 1288, 29 V.I. 279 (3d Cir. 1993)). There must also be proof that the defendant had the specific intent to facilitate the crime. *Brown*, 54 V.I. at 505-06 (citing *United States v. Mercado*, 610 F.3d 841, 846 (3d Cir. 2010)).

Khareem does not dispute that the substantive crime of murder has been committed. Instead, Khareem argues that there was insufficient evidence that he knew of the murder beforehand or attempted to facilitate it. While Khareem concedes that — based on the warnings he gave to his aunts — the People may have introduced sufficient evidence for the jury to reasonably infer that he had knowledge of pending trouble or danger in the area, he contends that the People failed to prove that he participated in or had the specific intent to facilitate the murder.

■ We agree. This Court has cautioned that a verdict cannot rest on the "attenuated piling of inference on inference." *Clarke v. People*, 55 V.I. 473, 482 (V.I. 2011) (quoting *United States v. Pettigrew*, 77 F.3d 1500, 1521 (5th Cir. 1996)). In this case, the only evidence the People introduced of Khareem's "participation" in the underlying crime was driving Jalani away from the crime scene. And even though the evidence tied bullet casings found at the scene to a gun found on Jalani's person when he was arrested with Khareem, it would be piling inference upon inference to conclude based on this evidence alone that Khareem had the specific intent to facilitate Almonzo's murder. Furthermore, there was no evidence that Khareem drove Jalani to the restaurant, nor was there evidence that Khareem was in the car waiting to pick up Jalani, or that

Khareem even knew Jalani was carrying a gun. (App. 549); *cf. Clarke*, 55 V.I. at 482 (holding that evidence of aiding and abetting was insufficient where the jury would have had to infer that the defendant drove the shooter to the scene, and would have had to further infer, based on this inference, that she knew the shooter possessed a gun and intended to use it).

In cases from this jurisdiction where courts have found defendants guilty of aiding and abetting a murder or assault, there has been substantially more evidence offered of the defendant's participation in the underlying crime. In *Brown*, there was testimony that the defendant "passed" a knife to his codefendant, who subsequently stabbed the victim. *Brown*, 54 V.I at 509. In *Navarro*, there was testimony that the defendant yelled "kill him" to his codefendant before the codefendant committed the crime. *Gov't of the V.I. v. Navarro*, 513 F.2d 11, 14, 11 V.I. 542 (3d Cir. 1975). Similarly, in *Nanton*, there was evidence of the defendant distracting the victim so her codefendants could attack, as well as the defendant actually striking the victim herself. *Nanton*, 52 V.I. at 471, 486.

▋ In this case, there was simply no evidence linking Khareem to planning, facilitating, encouraging, or attempting to participate in Almonzo's murder. Unlike the defendants in the above cited cases, there was no evidence of Khareem providing either Joh or Jalani with a gun, shouting encouragement, or participating in the shootings himself. While a rational trier of fact could infer Khareem's knowledge of impending trouble or danger by his statements to his aunts,[3] mere knowledge that a crime may occur, without more, is not proof that he associated himself with the criminal venture. *United States v. Garth*, 188 F.3d 99, 113 (3d Cir. 1999) ("liability for aiding and abetting someone else in the commission of a crime requires the specific intent of facilitating the crime, and mere knowledge of the underlying offense is not sufficient for conviction" (internal citations omitted)). As we have previously instructed, in determining whether a defendant has associated himself with and participated in a criminal undertaking, speculation is not a

---

[3] At trial Arkiesa testified that Khareem told her to go home because she was engaged in a verbal altercation with another woman. (App. 41.) This obviously contradicts the inference that Khareem told his aunt to leave the area because he knew a shooting was about to occur. However, when a defendant challenges the sufficiency of the evidence, we must view the evidence in the light most favorable to the People. *Mendoza*, 55 V.I. at 666-67.

substitute for evidence. *Clarke*, 55 V.I. at 482 ("[t]he drawing of one inference upon another to reach this conclusion is entirely too tenuous, and goes beyond reasonable inferences to mere speculation"). To conclude, solely from his statements to his aunts, that Khareem facilitated Almonzo's murder, is nothing short of pure speculation.[4]

Thus, while Khareem was charged both as a primary actor and as an aider and abettor to the homicide, the facts of this case appear to more support a charge of accessory after the fact than aiding and abetting. Title 14, section 12(a) of the Virgin Islands Code defines an accessory after the fact as someone who, "knowing that a crime or offense has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment." See also *Browne v. People*, 55 V.I. 931, 937-38 (V.I. 2011). Here, Khareem attempted to prevent Jalani's apprehension by refusing to stop for police, which ignited a high-speed car chase. However, Khareem was not charged under this theory.

██ ██ In addition, Khareem's conviction for reckless endangerment must fail for insufficient evidence. A person is guilty of reckless endangerment in the first degree when, under the circumstances evidencing a depraved indifference to human life, he recklessly engages in conduct in a public place which creates a grave risk of death to another person. 14 V.I.C. § 625(a). The trial record indicates that Khareem's charge of reckless endangerment was based on a theory of firing a gun in a public place (i.e., the restaurant's parking lot). However, as we have explained, there was no evidence indicating that Khareem possessed a firearm or fired any shots on August 2, 2009. The evidence might support a finding of reckless endangerment if the charge was based on the car

---

[4] Khareem also argues that there was insufficient evidence to convict him for the lesser included offense of voluntary manslaughter, given that Joh and Jalani were both convicted of first-degree murder and all the evidence in the record indicates an intentional, premeditated killing. *See* 14 V.I.C. § 924 (defining voluntary manslaughter as a killing done "upon a sudden quarrel or heat of passion"). However, a conviction for voluntary manslaughter as a lesser included offense may stand even absent evidence of a sudden quarrel or heat of passion, as long as the evidence was sufficient to convict the defendant of the greater offense. *State v. Harris*, 27 Kan. App. 2d 41, 998 P.2d 524, 528 (2000) (collecting cases); *see also Fontaine v. People*, 56 V.I. 571, 584 (V.I. 2012) (declining to review sufficiency of evidence for voluntary manslaughter when evidence sufficient to establish first-degree murder); *accord People v. Thompson*, 57 V.I. 342, 349-50 (V.I. 2012) (noting that a seemingly inconsistent verdict may be the product of lenity or compromise).

chase Khareem was involved in, but he was not charged for that conduct.[5] Hence, because of the lack of evidence that Khareem created a grave risk of death to another person at the restaurant, or aided or abetted such conduct, we reverse his conviction for reckless endangerment.

Therefore, after carefully reviewing the trial transcript and viewing the evidence in the light most favorable to the People, we conclude that there was insufficient evidence to uphold Khareem's convictions for aiding and abetting in the killing of Almonzo and for reckless endangerment.

## III. CONCLUSION

For the foregoing reasons, we reverse Khareem's convictions of the lesser included offense of voluntary manslaughter and reckless endangerment.

---

[5] The evidence of Khareem engaging in a high-speed car chase on a public street, breaking through a police road block, and then crashing into another vehicle might support a reckless endangerment conviction.